**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

MICHAEL FONG,
Plaintiff,
v.
TERRASCEND CORP.;
GAGE GROWTH CORP. (f/k/a Wolverine Partners Corp.; n/k/a TerrAscend Growth Corp.);
RADICLE CANNABIS HOLDINGS INC.;
RADICLE MEDICAL MARIJUANA INC.;
AEY HOLDINGS LLC;
AEY CAPITAL LLC;
SPARTAN PARTNERS CORPORATION;
SPARTAN PARTNERS HOLDINGS LLC;
COOKIES CREATIVE CONSULTING & PROMOTIONS, INC. (successor by conversion to Cookies Creative Consulting & Promotions LLC);
COOKIES SF LLC;
CANOPY GROWTH CORPORATION;
RIV CAPITAL INC. (f/k/a Canopy Rivers Inc.);
CANOPY USA, LLC;
JASON WILD;
BRUCE LINTON;
LYNN GEFEN;
FABIAN MONACO;
DAVID WATZA;
MICHAEL HERMIZ;
MICHAEL FINOS;
RAMI REDA;
YOUSSEF REDA;
ZIAD REDA;
ZIAD GHANEM;
GILBERT MILAM, JR. (publicly known as "Berner");

Case No. ____________
Hon. ____________
Mag. Judge ____________

Case: 4:26−cv−12872
Assigned To : Kumar, Shalina D.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 8/13/2026
Description: CMP FONG V. TERRASCEND CORP ET AL (NA)

JENNIFER LYNN DOMINGUE;
BARTON W. MORRIS, JR.;
CANNABIS LEGAL GROUP (a/k/a "The Law Offices of Barton W. Morris, Jr."); and
DOES 1–10,
Defendants.

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS


PRELIMINARY STATEMENT....7

I. NATURE OF THE ACTION....8

II. JURISDICTION AND VENUE....11

III. THE PARTIES....17

A. Plaintiff....17

B. Corporate Defendants....18

C. Individual Defendants....29

IV. PLAINTIFF'S MARKS AND PRIOR USE....35

V. OPERATIVE FACTS....46

A. The TerrAscend-Gage Enterprise....46

B. The September 16, 2019 Insider Transfer....52

C. The Wolverine Form 1-A Omissions....57

D. The October 12, 2020 License Agreement....58

E. The TerrAscend Acquisition....58

F. The AEY Capital / AEY Holdings Alter-Ego Operation....59

G. The 2025 Michigan Exit....60

H. The 2025–2026 Asset Extraction, Receivership, and Abandonment....61

I. The 2026 TTAB Judgment and Post-Judgment Concealment....68

J. The Cookies Web-Presence Priority Anchor....69

K. The Domingue Conflict of Interest....70

L. The Defendant Domain Portfolio....72

VI. COUNT I — False Designation of Origin, Unfair Competition, and Infringement of Registered and Unregistered Marks under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)....74

VII. DEFENDANTS' DOMAIN-REGISTRATION CONDUCT AS EVIDENCE OF BAD FAITH AND WILLFUL INTENT....88

VIII. COUNT II — Civil RICO under 18 U.S.C. § 1962(c)....90

A. The Enterprise....91

B. Pattern of Racketeering Activity....................................................................93
C. Continuity Plus Relationship.........................................................................96
D. Injury to Plaintiff in Plaintiff's Business or Property....................................100
IX. COUNT III — RICO Conspiracy under 18 U.S.C. § 1962(d)......................103
X. COUNT IV — Void Title and Fraudulent Transfer (Michigan Uniform Voidable Transactions Act, MCL 566.31 et seq.) and Constructive Trust.........106
XI. THE DOMINGUE–MORRIS CONFLICT RECORD AS EVIDENCE OF ENTERPRISE KNOWLEDGE AND INEQUITABLE CONDUCT.................113
XII. PRAYER FOR RELIEF..............................................................................114
XIII. DEMAND FOR JURY TRIAL...................................................................116
VERIFICATION.................................................................................................117
CERTIFICATE OF SERVICE............................................................................118

## TABLE OF AUTHORITIES

### CASES

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451...................................................98
*Boyle v. United States*, 556 U.S. 938.................................................................91
*Calder v. Jones*, 465 U.S. 783.............................................................................15
*Hemi Group, LLC v. City of New York*, 559 U.S. 1...............................................98
*Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229.................................63, 96
*Kammer Asphalt Paving Co. v. East China Township Schools*, 443 Mich 176. .112
*Kent v. Klein*, 352 Mich 652...............................................................................112
*Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 11845, 79
*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325...................................99
*S.P.R.L. v. Imrex Co.*, 473 U.S. 479...........................................................97, 103
*S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308................................................111
*Salinas v. United States*, 522 U.S. 52.......................................................104, 106
*See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694.......................17
*See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138.......................44

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 .......... 80
*Water Splash, Inc. v. Menon*, 581 U.S. 271 .......... 17

**COURT RULES**

MCR 2.105(A) .......... 120

**STATUTES**

15 U.S.C. § 1051 .......... 76
15 U.S.C. § 1057 .......... 37, 75
15 U.S.C. § 1114 .......... 45
15 U.S.C. § 1117 .......... 56, 64, 67, 87, 88, 90, 114, 115
15 U.S.C. § 1125 .......... 74, 88, 90
15 U.S.C. §§ 1057 .......... 76
18 U.S.C. § 1341 .......... 95
18 U.S.C. § 1343 .......... 95
18 U.S.C. § 1956 .......... 95
18 U.S.C. § 1962 .......... 32, 90, 97, 103, 104, 106
18 U.S.C. § 1964 .......... 11, 93, 102, 115
18 U.S.C. § 1965 .......... 13, 14
18 U.S.C. §§ 1341 .......... 94, 95
18 U.S.C. §§ 1956 .......... 95
18 U.S.C. §§ 1962 .......... 106
21 U.S.C. §§ 802 .......... 78
28 U.S.C. § 102 .......... 11, 12
28 U.S.C. § 1331 .......... 11
28 U.S.C. § 1338 .......... 11
28 U.S.C. § 1367 .......... 11
28 U.S.C. § 1391 .......... 11
28 U.S.C. § 1746 .......... 117
7 U.S.C. § 1639o .......... 75

MCL 429.44 .......... 44
MCL 554.1024 .......... 22
MCL 554.1028 .......... 22
MCL 566.31 .......... 106, 115
MCL 566.34 .......... 108, 115
MCL 566.35 .......... 108
MCL 566.37 .......... 110, 115
MCL 566.38 .......... 111
MCL 566.39 .......... 109
MCL 600.5813 .......... 109
MCL 600.5855 .......... 109
MCL 600.705 .......... 13
MCL 600.715 .......... 13

## PRELIMINARY STATEMENT

*Aequitas respicit substantiam, non formam* — equity regards substance rather than form. 1 J. Story, *Commentaries on Equity Jurisprudence* vol. 1, at 64 (1836); 3 W. Blackstone, *Commentaries on the Laws of England*, at 430–31. This action invokes that maxim against a publicly-traded enterprise that erected the *form* of a Canadian-corporate trademark portfolio and an acquisition announced at approximately $545,000,000 (Paragraph 41) over the *substance* of Plaintiff's continuous commercial use of the GAGE family of trademarks in interstate commerce, documented since 2011 ([Exhibit N]) and claimed since 2008. Plaintiff invokes the equitable as well as legal jurisdiction of this Court to restrain that misappropriation, impose a constructive trust over its traceable proceeds, and afford full relief at law and in equity.

Plaintiff MICHAEL FONG, appearing in propria persona, brings this action as the senior principal of Gage Green Group to whom the bona fide commercial use of the GAGE family of trademarks and the goodwill accruing therefrom are attributable, against TerrAscend Corp. (a publicly-traded Ontario, Canada corporation, SEC CIK 0001778129) and the affiliated network of entities and individuals identified below, on federal-question jurisdiction under the Lanham Act and Civil RICO, with supplemental jurisdiction over related Michigan state-law claims. Venue is laid in the Eastern District of Michigan because a

substantial part of the events giving rise to the claims occurred in this District through the operation of approximately twenty (20) Michigan-licensed cannabis retail locations under the misappropriated GAGE brand.

## I. NATURE OF THE ACTION

1. This action arises from a coordinated, multi-year scheme to misappropriate the GAGE / GAGE GREEN / GAGE GREEN GROUP family of trademarks (collectively, the "GAGE Marks"), to misappropriate the goodwill those marks accrued through Plaintiff's continuous commercial use (documented since 2011 and claimed since 2008), and to convert that misappropriated brand equity into a publicly-traded enterprise — a transaction announced in 2021 at an approximately $545,000,000 value and closed in March 2022 at an approximately $386,000,000 realized value (Paragraph 41) — with neither disclosure nor compensation to Plaintiff. The operative facts summarized here are pleaded with particularity in Paragraphs 31 through 56 and anchored to primary-source exhibits, including [Exhibits H-M] (TerrAscend and Wolverine SEC filings).

2. Plaintiff is the founder and principal of Gage Green Group ("GGG"), an institutional cannabis-genetics steward that has used the GAGE Marks continuously in interstate commerce across multiple Nice International

Classification classes, documented since 2011 and claimed since 2008. See [Exhibits A-D] (TTABVUE Opposition Nos. 91278331 and 91252169); [Exhibit N] (Wayback Machine status-200 capture of gagegreen.org, July 9, 2011, titled "Gage Green Genetics" with the masthead "Serving the finest cannabis for connoisseurs in the medical community").

3. On May 6, 2026, the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") entered a final judgment with prejudice against Gage Growth Corp. in Opposition No. 91278331 on Rule 2.128(a)(3) failure-to-prosecute grounds. See [Exhibit A] (TTABVUE Entry 41). Plaintiff's federal trademark filings survive that judgment — including Serial No. 90324487, which matured into Registration No. 8,268,743 (GAGE GREEN GROUP), and Serial Nos. 90746550 and 97251818 (applications pending).

4. In Opposition No. 91252169, decided April 29, 2025, and reconsideration denied July 11, 2025, the TTAB found the GAGE mark **inherently distinctive** for marijuana **and not generic**. See [Exhibits C and D] (TTABVUE 91252169 Entry 78 at 56-58 (distinctiveness and non-genericness findings); Entry 84 (reconsideration denial)). The Board dismissed Plaintiff's predecessor-opposers' Section 2(d) opposition on the ground that priority of common-law use was not established by a preponderance on the registration-opposition record, and

**expressly declined to reach likelihood of confusion**; the Board did not adjudicate the marketplace usages at issue in this action. Plaintiff establishes priority and likelihood of confusion **de novo** in this Court through the continuous-use evidence pleaded below.

5. Notwithstanding the TTAB record, Defendant TerrAscend Corp. filed its Fiscal Year 2025 Form 10-K on March 12, 2026 — the same day the TTAB issued its Show-Cause Order in Opposition No. 91278331 — without disclosing either the opposition or its imminent default posture. See [Exhibit I] (SEC EDGAR CIK 0001778129, FY2025 Form 10-K filed 2026-03-12). On May 7, 2026, one day after the May 6 final judgment, TerrAscend filed its Q1-2026 Form 10-Q without subsequent-event disclosure. See [Exhibit J] (SEC EDGAR CIK 0001778129, Q1-2026 Form 10-Q filed 2026-05-07).

6. The defendants identified above, together with Does 1–10, conducted an enterprise — through a pattern of mail fraud, wire fraud, and related-party non-arms-length transfers — that misappropriated the GAGE Marks, defrauded Plaintiff, and defrauded the Michigan Cannabis Regulatory Agency. Plaintiff seeks (a) trademark injunctive relief and damages under the Lanham Act, (b) treble damages under Civil RICO, (c) avoidance under the Michigan Uniform Voidable Transactions Act, and (d) common-law remedies including

disgorgement of the TerrAscend acquisition consideration — announced at approximately $545,000,000 and valued at approximately $386,000,000 at the March 10, 2022 closing (Paragraph 41) — as constructive trust. See [Exhibits H, I, J, K] (TerrAscend SEC filings) and [Exhibit G] (Michigan CRA Consent Order ENF 22-00499).

## II. JURISDICTION AND VENUE

7. This Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 (Lanham Act and federal trademark claims) and 18 U.S.C. § 1964 (Civil RICO), with supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. The enterprise operated GAGE-branded cannabis retail locations within the Eastern District of Michigan — including Detroit (Wayne County), Ferndale (Oakland County), Burton (Genesee County), and Adrian (Lenawee County), each within this District under 28 U.S.C. § 102(a) — and the Michigan licensee entities AEY Holdings LLC and AEY Capital LLC conducted operations under the assumed name "Gage Cannabis Company" (Michigan LARA assumed-name renewal dated January 15, 2026, in effect through December 31, 2031).

Plaintiff's own GAGE-branded commerce in this District likewise predates the enterprise's Michigan entry: the 2014 "Gage Green" purchase orders pleaded in Paragraph 31(d)(iii) shipped GAGE GREEN genetics to Jackson (Jackson County) and Oxford (Oakland County), Michigan — both within this District under 28 U.S.C. § 102(a)(1) — four years before the enterprise's October 2018 Michigan brand launch. See [Exhibit N-5]. Defendant Cannabis Legal Group and Defendant Barton W. Morris, Jr. maintain offices, and Defendant Domingue committed the conflict-of-interest acts pleaded in Section XI, in Royal Oak, Oakland County — within this District. The enterprise's twenty (20) Michigan-licensed retail locations — nine "Gage"-branded (Detroit, Ferndale, Burton, Lansing, Kalamazoo, Grand Rapids, Traverse City, Battle Creek, and Adrian), five "Cookies"-branded (Detroit, Ann Arbor, Jackson, Oxford, and Kalamazoo), five "Pinnacle Emporium"-branded (Morenci, Camden, Edmore, Addison, and Buchanan), and one "Lemonnade"-branded (Centerline) — are enumerated by name and street address in TerrAscend's own June 30, 2025 Form 8-K location schedule ([Exhibit K]); those within this District supply the substantial in-District commercial contacts that establish venue, and Plaintiff does not contend that every enumerated location lies within this District. Section 1391(b)(2) requires only that a substantial part of the events occurred

here, which the in-District GAGE operations, the AEY licensee conduct, and the Royal Oak attorney-conflict acts independently satisfy. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 1998) (venue under § 1391(b)(2) is established by the location of a substantial part of the events giving rise to the claim, independent of any defendant's residence or place of incorporation).

9. Personal jurisdiction over each Defendant is conferred by (a) Michigan's long-arm statute — MCL 600.705 (limited personal jurisdiction over individuals) as to the individual Defendants, and MCL 600.715 (limited personal jurisdiction over corporations) as to the corporate Defendants — for those Defendants who transacted business in Michigan, caused tortious injury in Michigan, or used the GAGE Marks in Michigan; and (b) Federal Rule of Civil Procedure 4(k) for the federal-question claims, including 18 U.S.C. § 1965(b) as to the Civil RICO claims (Paragraph 9A). For Defendants resident in Canada and Defendants resident outside Michigan, service shall be effected through the Hague Convention or by waiver under Federal Rule of Civil Procedure 4(d).

9A. **Personal jurisdiction over the Canopy Defendants; service of the foreign Canopy Defendants.** This Court has personal jurisdiction over Defendants Canopy Growth Corporation and RIV Capital Inc. (together, the "Foreign Canopy Defendants") and over Defendant Canopy USA, LLC. First,

on the federal Civil RICO claims (Counts II and III), 18 U.S.C. § 1965(b) authorizes nationwide service of process to summon the out-of-District United States participants in a single RICO enterprise — the California, Connecticut, and Florida Defendants, including Defendant Wild, a Florida resident (Paragraph 19) — once the Court has personal jurisdiction over at least one Defendant properly venued in this District under § 1965(a). That anchor is satisfied here by the Michigan-resident Defendants (Paragraphs 15–16, 18, 24, 28–29A), who reside, are found, have agents, and transact their affairs in this District within the meaning of § 1965(a) through the enterprise's approximately twenty (20) Michigan GAGE-branded retail locations (Paragraphs 8, 43-45). *See Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC* (6th Cir. 2022) (Section 1965(b), not Section 1965(d), supplies civil RICO's nationwide jurisdictional reach, which hinges on at least one defendant's minimum contacts with the forum State); cf. *Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 566–68 (6th Cir. 2001) (applying, by analogy, a parallel federal nationwide-service provision and its minimum-contacts anchor). The ends of justice require summoning those out-of-District United States Defendants before this Court under § 1965(b): because the members of the single enterprise pleaded herein reside in Michigan, California, Connecticut, Florida, and Ontario, no other

single judicial district could exercise personal jurisdiction over all of them, so haling them into this District — where the enterprise's retail operation and the bulk of the pleaded conduct occurred — is necessary and not merely convenient. Section 1965(b) is a domestic nationwide-service provision reaching persons servable within a judicial district of the United States; it is not asserted as the basis for jurisdiction over the Foreign Canopy Defendants abroad, whose amenability to suit rests on the independent predicates set out next. Second, and independently, Federal Rule of Civil Procedure 4(k)(2) confers jurisdiction over the Foreign Canopy Defendants on the federal-law claims, because they are not subject to the general jurisdiction of any single State and the exercise of jurisdiction upon their aggregate United States contacts comports with the Due Process Clause of the Fifth Amendment. Third, the Foreign Canopy Defendants purposefully directed their conduct at Michigan within the meaning of *Calder v. Jones*, 465 U.S. 783 (1984): they funded and seeded, and through Defendant Linton chaired, an enterprise that deliberately built a saturating Michigan retail operation under the misappropriated GAGE brand (Paragraphs 33A-33C, 43), maturing into the approximately twenty (20) Michigan GAGE-branded retail locations (Paragraphs 8, 43-45), and the resulting injury landed upon Plaintiff, a Michigan plaintiff. The Foreign Canopy

Defendants' documented United States contacts include their counterparty roles in the October 8, 2018 Arrangement Agreement reorganizing the United States-market acquirer (Paragraph 33C; [Exhibits DD, I]) and Canopy Growth Corporation's direct holding of 19,445,285 TerrAscend Exchangeable Shares (Paragraph 33C; [Exhibit EE]). Fourth, Defendant Canopy USA, LLC is a United States entity subject to this Court's jurisdiction on its own United States contacts, including its holding of 24,601,467 TerrAscend Exchangeable Shares acquired in the December 9, 2022 arrangement (Paragraph 33D; [Exhibit I]). Service upon each Foreign Canopy Defendant — Canopy Growth Corporation, a corporation existing under the federal laws of Canada with a registered office in Ontario, and RIV Capital Inc., an Ontario corporation — shall be effected under the Hague Service Convention by transmission of a completed Request for Service Abroad, the summons, and the Verified Complaint — in English, no French translation being required for Ontario — to Canada's Central Authority competent for Ontario under Article 5(a), with service by an Ontario process server under Article 10(b) as a parallel channel (Canada having lodged no objection to Article 10), and with a request for waiver of service under Federal Rule of Civil Procedure 4(d) in the first instance; Plaintiff will confirm each Foreign Canopy Defendant's current registered office from the Ontario Business

Registry before service. Transmission proceeds under Federal Rule of Civil Procedure 4(h)(2) and 4(f)(1) for the Central-Authority channel and under Rule 4(f)(2)(A) for the Ontario process-server channel. The Convention governs only the manner of transmitting process abroad and does not itself confer personal jurisdiction, which rests on the independent predicates pleaded above. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988); *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) (Canada having lodged no objection to Article 10, its channels are available where the forum's law authorizes them).

## III. THE PARTIES

### A. PLAINTIFF

10. Plaintiff Michael Fong is the founder, principal, and controlling authority of Gage Green Group, and receives mail at 4225 Miller Road, Suite 9, #131, Flint, Michigan 48507. Plaintiff has been the senior principal responsible for the continuous commercial use of the GAGE Marks in the ordinary course of trade, documented since 2011 and claimed since 2008. Gage Green Group commenced as a partnership; its bona fide commercial use of the GAGE Marks in commerce, and the goodwill accruing therefrom, are attributable to Plaintiff as senior principal. Upon the July 7, 2022 dissolution of the partnership entity Gage Specialties LLC, all right, title, and interest in and to the GAGE Marks and their associated goodwill were assigned — *nunc pro tunc* effective the

dissolution date — to Fang LLC, and thereafter to Gage Prestige Holdings LLC; those assignments are recorded with the United States Patent and Trademark Office at Reels 8419/0700 and 8419/0719, and the Trademark Trial and Appeal Board recognized Gage Prestige Holdings LLC and Fang LLC as the successor applicants in Opposition No. 91278331. No other person or entity holds any recorded right, title, or interest in the GAGE Marks. Record title to the GAGE Marks is consolidated in Gage Prestige Holdings LLC, and Plaintiff pleads no claim as owner or registrant of any registration (see Paragraphs 32B and 58A). Plaintiff sues in his personal capacity as the individual whose continuous commercial use built the goodwill at issue: from the marks' adoption, Plaintiff personally used and promoted the GAGE Marks and personally conducted and oversaw the offering of goods and services under them, and the injuries pleaded herein are injuries to Plaintiff's own commercial interests in reputation and sales.

## B. CORPORATE DEFENDANTS

11. **TerrAscend Corp.** is a publicly-traded corporation organized under the laws of the Province of Ontario, Canada, listed on the Toronto Stock Exchange (symbol TSND) and the OTCQX market (symbol TSNDF), Central Index Key 0001778129 with the United States Securities and Exchange Commission.

TerrAscend Corp. is the ultimate parent of Defendant Gage Growth Corp. since the March 10, 2022 closing of TerrAscend's acquisition of Gage Growth Corp., a transaction announced in 2021 at an approximately $545,000,000 value and valued at approximately $386,000,000 as of the March 2022 closing (Paragraph 41). On information and belief based on TerrAscend's public SEC filings ([Exhibits I], J, and K) and the Michigan Cannabis Regulatory Agency Consent Order in ENF 22-00499 ([Exhibit G], executed on behalf of AEY Capital LLC by Defendant Lynn Gefen in her capacity as Manager while she simultaneously served as Chief Legal Officer of TerrAscend Corp.), Plaintiff alleges that TerrAscend Corp., Gage Growth Corp. (f/k/a Wolverine Partners Corp.), AEY Holdings LLC, and AEY Capital LLC constitute a single business enterprise operated as alter-egos of one another, with common ownership, common officers, common counsel, commingled assets and operations, and shared brand identity; the corporate veils of each are subject to piercing for the misconduct pleaded herein.

12. On information and belief based on Defendants' SEC filings ([Exhibits L-M], [Exhibit I]) and Michigan LARA records, **Gage Growth Corp.** (f/k/a Wolverine Partners Corp.; n/k/a TerrAscend Growth Corp.) is a corporation organized under the Canada Business Corporations Act, headquartered in

Mississauga, Ontario, Canada. It was organized on November 22, 2017 as Wolverine Partners Corp., subsequently changed its name to Gage Growth Corp., and following the TerrAscend acquisition was renamed TerrAscend Growth Corp.; it is a single, continuous legal person throughout. It carries the "Gage Cannabis" line that Radicle Cannabis Holdings Inc. launched in October 2018 and transferred to it, under its then-name Wolverine Partners Corp., on September 16, 2019 (Paragraph 35).

13. "Wolverine Partners Corp." is the former name of Defendant Gage Growth Corp. (Paragraph 12) and is not a separate Defendant; the two names denote a single, continuous legal person. References in this Complaint to "Wolverine Partners Corp." or "Wolverine" denote that Defendant under its former name and describe acts it took under that name, including its acquisition of the "Gage Cannabis" line from Radicle Cannabis Holdings Inc. on September 16, 2019 (Paragraph 35) and the SEC Form 1-A it filed and amended on September 1, September 14, and September 18, 2020 (CIK 0001810254). See [Exhibits L-M].

14. **Radicle Medical Marijuana Inc.** and its affiliate **Radicle Cannabis Holdings Inc.** are Canadian corporations associated with the Reda family; Radicle Medical Marijuana Inc. created and launched the "Gage Cannabis" line

in October 2018, and those rights were transferred to Wolverine Partners Corp. on September 16, 2019. See [Exhibits L-M] (Wolverine Partners Corp. SEC Form 1-A, CIK 0001810254).

15. **AEY Holdings LLC** is a Michigan limited liability company organized under the laws of the State of Michigan, manager Lynn Gefen. AEY Holdings LLC is the registrant of the "Gage Cannabis Company" assumed name with Michigan LARA, renewed through December 31, 2031 by filing dated January 15, 2026.

16. **AEY Capital LLC** is a Michigan limited liability company organized under the laws of the State of Michigan that was the subject of the Michigan Cannabis Regulatory Agency Consent Order and Stipulation in Formal Complaint ENF 22-00499 (AUP000138), executed by Lynn Gefen as Manager.

16A. **Pending Michigan receivership of certain Defendants.** On May 6, 2026, the Oakland County Circuit Court (Sixth Judicial Circuit), Case No. 2026-222791-CB, entered an order appointing Charles Bullock of Stevenson & Bullock, P.L.C. as receiver over certain Michigan entities (the "Michigan Receivership Entities"), which include Defendants AEY Capital LLC and AEY Holdings LLC, on the application of the secured lender's administrative agent following a May 1, 2026 forbearance agreement. See [Exhibit J] (TerrAscend

Corp. Form 10-Q filed May 7, 2026, disclosing the receivership and enumerating the Michigan Receivership Entities). To the extent the Michigan Uniform Commercial Real Estate Receivership Act, MCL 554.1024, stays actions against the Michigan Receivership Entities or their property, or MCL 554.1028 conditions suit against the receiver, Plaintiff will seek leave of the appointing court or assert a claim in the receivership as to those Defendants; this action proceeds in all events against the remaining Defendants, whose liability is not affected by the receivership. The receivership does not encumber the traceable acquisition consideration — valued at approximately $386,000,000 at closing (Paragraph 41) — that is the subject of Plaintiff's constructive-trust and Uniform Voidable Transactions Act claims (Count IV), which flowed to the selling Defendants upon the March 10, 2022 closing and is not property of the Michigan receivership estate.

16B. **Spartan Partners Corporation** is a corporation organized under the laws of the State of Michigan whose registered agent for service of process of record with the Michigan Department of Licensing and Regulatory Affairs is Capitol Corporate Services, Inc., 186 North Main Street, 2nd Floor, Plymouth, Michigan 48170 — the same Michigan resident agent shared across the enterprise's TerrAscend, Spartan, and AEY entity family. Spartan Partners

Corporation is named in TerrAscend Corp.'s own public securities filings as one of the Michigan Receivership Entities placed under the Oakland County receivership pleaded in Paragraph 16A. See [Exhibit J] (TerrAscend Corp. Form 10-Q filed May 7, 2026, enumerating the Michigan Receivership Entities, which include "Spartan Partners Corporation"). On information and belief, Spartan Partners Corporation is the Michigan holding corporation that sits atop the enterprise's United States operating entities, holds the operating value of the Gage Michigan retail platform, and constitutes an alter-ego link in the chain of ownership and control running from Wolverine Partners Corp. (n/k/a Defendant Gage Growth Corp.) to the Michigan operating subsidiaries pleaded herein; its corporate veil is subject to piercing for the misconduct pleaded herein. Service will be effected under Federal Rule of Civil Procedure 4(h)(1)(B) upon its Michigan registered agent.

16C. **Spartan Partners Holdings LLC** is a limited liability company organized under the laws of the State of Michigan whose registered agent for service of process of record with the Michigan Department of Licensing and Regulatory Affairs is Capitol Corporate Services, Inc., 186 North Main Street, 2nd Floor, Plymouth, Michigan 48170. Spartan Partners Holdings, LLC is likewise named in TerrAscend Corp.'s own Form 10-Q filed May 7, 2026 as one of the

Michigan Receivership Entities placed under the Oakland County receivership pleaded in Paragraph 16A. See [Exhibit J] (TerrAscend Corp. Form 10-Q filed May 7, 2026, enumerating the Michigan Receivership Entities, which include "Spartan Partners Holdings, LLC"). On information and belief, Spartan Partners Holdings LLC is the intermediate Michigan holding company grouping the enterprise's Michigan operating limited liability companies — including its Michigan services, properties, and licensing subsidiaries and the Mayde United States operations — through which the misappropriated GAGE brand was operated at retail, and is an alter-ego of that Michigan operating tier; its corporate veil is subject to piercing for the misconduct pleaded herein. Service will be effected under Federal Rule of Civil Procedure 4(h)(1)(B) upon its Michigan registered agent.

17. **Cookies Creative Consulting & Promotions, Inc.** (successor by conversion to Cookies Creative Consulting & Promotions LLC) and **Cookies SF LLC** (collectively, "Cookies") are entities associated with Defendant Gilbert Milam, Jr.

18. **Cannabis Legal Group**, also doing business as "The Law Offices of Barton W. Morris, Jr.", is a Michigan law firm with offices in Royal Oak, Michigan, owned by Defendant Barton W. Morris, Jr. Cannabis Legal Group is the

registered agent for Terra Mend LLC (Michigan LARA Entity ID 802136141, registered agent Barton W. Morris, Jr., 520 N Main St, Royal Oak, MI 48067). See [Exhibit V] (Michigan LARA records, Terra Mend LLC).

18A. **Canopy Growth Corporation** is a corporation organized under the laws of Canada, with its registered head office at 1 Hershey Drive, Smiths Falls, Ontario K7A 0A8, Central Index Key 0001737927 with the United States Securities and Exchange Commission, and listed on the Nasdaq Global Select Market (symbol CGC) and the Toronto Stock Exchange (symbol WEED). Canopy Growth Corporation is the former employer of Defendant Bruce Linton (Paragraph 20) — its founder and former Chief Executive Officer, who became Executive Chairman and Director of Gage Growth Corp. Through its controlled venture arm Canopy Rivers Inc. (n/k/a Defendant RIV Capital Inc., Paragraph 18B), of which it owned 100% of the Multiple Voting Shares, Canopy Growth Corporation acquired in August 2017 a 23.81% equity stake in Defendant Radicle Medical Marijuana Inc. — the entity that fourteen months later launched the "Gage Cannabis Co." brand (Paragraphs 33A, 34). Canopy Growth Corporation was a named counterparty, together with Canopy Rivers, to the October 8, 2018 Arrangement Agreement that reorganized Defendant TerrAscend Corp.'s capital and waived the covenants that had restricted

TerrAscend from operating in the United States, and following that reorganization Canopy Growth Corporation directly held 19,445,285 TerrAscend Exchangeable Shares. *See* [Exhibit CC] (Cision press release, "In August 2017, Canopy Growth via Canopy Rivers acquired a 23.81 per cent equity stake in Radicle Medical Marijuana," filed as Exhibit A to the Declaration of Ziad Reda in TTAB Opposition No. 91252169, Entry 34 (ESTTA No. 1177929, filed December 10, 2021)); [Exhibit EE] (Canopy Growth Corporation Form 6-K furnished December 3, 2018, Exhibit 99.1, stating that pursuant to the Arrangement, Canopy Growth and Rivers each received 19,445,285 Exchangeable Shares); [Exhibit EE-1] (Canopy Growth Corporation Form 10-K for the fiscal year ended March 31, 2020 (excerpt), stating that Canopy Growth owns 36,468,318 Multiple Voting Shares of Canopy Rivers, representing 100% of the issued and outstanding Multiple Voting Shares); [Exhibit DD] (Schedule 13D on TerrAscend Corp. filed March 17, 2022, describing the TerrAscend Reorganization completed on November 30, 2018).

18B. **RIV Capital Inc.** (f/k/a Canopy Rivers Inc.) is a corporation organized under the laws of the Province of Ontario, Canada; "RIV Capital Inc." is the current name of the former "Canopy Rivers Inc.," the publicly-traded venture

arm through which Defendant Canopy Growth Corporation made the investments pleaded herein. As Canopy Rivers Inc., in August 2017 it acquired the 23.81% equity stake in Defendant Radicle Medical Marijuana Inc. that created and first launched the "Gage Cannabis Co." brand (Paragraphs 33A, 34), and it was a named counterparty to the October 8, 2018 Arrangement Agreement reorganizing TerrAscend for United States-market entry (Paragraph 33C). *See* [Exhibit DD] (Schedule 13D on TerrAscend Corp. identifying "RIV Capital Inc. (formerly Canopy Rivers Inc.)"); [Exhibit CC] (23.81% Radicle stake). RIV Capital Inc. maintains its registered head office at 365 Bay Street, Suite 800, Toronto, Ontario M5H 2V1. On December 19, 2024, RIV Capital Inc. was acquired by Cansortium Inc. (which does business as Fluent Corp.) by Ontario plan of arrangement, its shares were delisted, and it ceased to be a reporting issuer in Canada by order of the Ontario Securities Commission dated January 14, 2025; RIV Capital Inc. now operates within the Fluent corporate group, a fact bearing on the manner of service and the collectability of any judgment. See [Exhibit JJ] (Ontario Securities Commission order dated January 14, 2025, and Fluent Corp. press release dated December 19, 2024, announcing completion of the RIV Capital acquisition).

18C. **Canopy USA, LLC** is a limited liability company formed on October 24, 2022 by Defendant Canopy Growth Corporation to hold Canopy Growth's United States cannabis investments, including its interest in Defendant TerrAscend Corp. Canopy Growth deconsolidated Canopy USA, LLC for financial-reporting purposes effective April 30, 2024, while Canopy USA continued to hold the TerrAscend Exchangeable Shares described below. On December 9, 2022, TerrAscend converted, in exchange for 24,601,467 TerrAscend Exchangeable Shares, aggregate loans plus accrued interest that TerrAscend's own Fiscal Year 2025 Form 10-K states (in thousands) as CAD $125,500, held by Canopy USA, LLC. *See* [Exhibit I] (TerrAscend Corp. Fiscal Year 2025 Form 10-K, SEC EDGAR CIK 0001778129, describing the December 9, 2022 arrangement with Canopy USA, LLC to convert CAD $125,500 (in thousands) in aggregate loans plus accrued interest in exchange for 24,601,467 Exchangeable Shares). On information and belief, Canopy USA, LLC is organized under the laws of a State of the United States; Plaintiff will confirm its state of organization and registered agent for service of process from the applicable corporate registry before service.

## C. INDIVIDUAL DEFENDANTS

19. **Defendant Jason Wild** is the Executive Chairman and Chairman of the Board of TerrAscend Corp. and controls approximately 27% of TerrAscend's voting capital stock as of March 11, 2026 (and approximately 31% as of March 6, 2025). *See* [Exhibit I] (TerrAscend FY2025 Form 10-K) and SEC Schedule 13D/A filings on TerrAscend, CIK 0001778129. Defendant Wild simultaneously stands on the **creditor** side of TerrAscend: through funds he controls — JW Partners, LP and JW Opportunities Fund, LLC — Defendant Wild is a member of the lender syndicate of TerrAscend's senior-secured FG Loan (a $222,100,000 facility, 12.75% per annum, maturing August 1, 2028), having invested approximately $7,100,000, a relationship TerrAscend's own SEC filings disclose as a related-party transaction and identify as a potential conflict of interest. *See* [Exhibits I] and J (TerrAscend FY2025 Form 10-K and Q1-2026 Form 10-Q, related-party disclosures). Defendant Wild is thus both the controlling equity holder of the debtor and a creditor positioned to benefit from the Michigan receivership described in Paragraph 16A.

20. **Defendant Bruce Linton** is the former Chief Executive Officer of Canopy Growth Corporation (SEC CIK 0001737927) and served as **Executive Chairman and Director of Gage Growth Corp.** Defendant Linton executed the October 12, 2020 Gage-brand License Agreement in his capacity as

Executive Chairman and Director of Gage Growth Corp. *See* [Exhibit Z] (October 12, 2020 License Agreement, Gage Growth Corp. signature page bearing "/s/ Bruce Linton — Executive Chairman and Director," produced by Dentons LLP in TTAB Opposition No. 91252169 discovery).

21. **Defendant Lynn Gefen** served as Chief Legal Officer and Corporate Secretary of TerrAscend Corp. from May 23, 2022 until her appointment as Chief People Officer in November 2024, and concurrently served as Manager of AEY Holdings LLC and AEY Capital LLC. TerrAscend publicly announced Defendant Gefen's appointment as Chief Legal Officer and Corporate Secretary effective May 23, 2022. Gefen executed the Michigan CRA Consent Order in ENF 22-00499 in 2023 ([Exhibit G]) in the AEY-Manager capacity while serving as TerrAscend's Chief Legal Officer.

22. **Defendant Fabian Monaco** is the President and Director of Gage Growth Corp. and signed the October 12, 2020 License Agreement on behalf of Gage Growth Corp.

23. **Defendant David Watza** is the **Chief Financial Officer of Gage Growth Corp.** and executed the October 12, 2020 Gage-brand License Agreement in that capacity. *See* [Exhibit Z] (October 12, 2020 License Agreement, Gage

Growth Corp. signature page bearing "/s/ David Watza — Chief Financial Officer").

24. **Defendant Michael Hermiz** is a co-founder and director of Wolverine Partners Corp. Hermiz's wholly-owned vehicles received related-party real-estate transfers of $10,150,000 disclosed in Wolverine Partners' SEC Form 1-A. See [Exhibits L-M].

25. **Defendants Rami Reda**, **Youssef Reda**, and **Ziad Reda** are members of the Reda family. Defendant Youssef Reda served as Chief Marketing Officer of the Radicle sellers (Defendant Radicle Medical Marijuana Inc., the Radicle entity that launched the "Gage Cannabis Co." brand, and its affiliate Defendant Radicle Cannabis Holdings Inc.) and simultaneously as a founding board member of Defendant Wolverine Partners Corp. (the buyer of the "Gage Cannabis" brand on September 16, 2019), establishing a non-arms-length insider-transfer relationship as both seller-side and buyer-side principal. On information and belief, and as publicly announced in Radicle Medical Marijuana Inc.'s October 18, 2018 launch of the Gage Cannabis Co. brand, Defendant Youssef Reda served as Chief Marketing Officer of Radicle Medical Marijuana Inc. (seller-side role); his buyer-side founding board seat at Wolverine Partners Corp. is documented in [Exhibits L-M] (SEC Form 1-A,

CIK 0001810254). On information and belief, Defendant Ziad Reda participated in the Reda-family ownership and control of Radicle Cannabis Holdings Inc. and the related-party transactions pleaded in Paragraphs 35–36 and 39; Defendant Ziad Reda personally executed a declaration submitted in support of the enterprise's position in TTAB Opposition No. 91252169 (Entry 34, ESTTA No. 1177929, filed December 10, 2021), attaching as its Exhibit A the press release documenting Canopy's August 2017 funding of the brand-source entity. *See* [Exhibit CC].

26. **Defendant Ziad Ghanem** is the Chief Executive Officer and President of TerrAscend Corp. *See* [Exhibit I] (TerrAscend FY2025 Form 10-K, SEC EDGAR CIK 0001778129). On information and belief, as the enterprise's current Chief Executive Officer and President, Defendant Ghanem directs and ratifies TerrAscend's continued conduct of the enterprise's affairs — including the enterprise's continued occupation of Plaintiff's mark-space and the concealment pleaded in Paragraphs 44–45C — and thereby knowingly agreed to the furtherance of the enterprise's pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(d); he is named in the Count III conspiracy (Paragraph 73), not the Count II substantive claim.

27. **Defendant Gilbert Milam, Jr.** (publicly known as "Berner") is the founder of Defendants Cookies Creative Consulting & Promotions, Inc. (successor by conversion to Cookies Creative Consulting & Promotions LLC) and Cookies SF LLC. Cookies has acted as the principal Michigan licensing partner of the TerrAscend Gage retail platform.

28. **Defendant Jennifer Lynn Domingue** held herself out to Plaintiff and to the public as an attorney. On the September 20, 2021 City of Owosso marihuana-license amendment application that she completed on behalf of Defendant AEY Holdings LLC, she stated her affiliation with that entity as "Attorney" and gave her contact address as legal@gageusa.com and her telephone number as (734) 770-9529. *See* [Exhibit AA]. During her association with Defendant Cannabis Legal Group, Domingue provided legal consultation to Plaintiff concerning Plaintiff's rights in the GAGE Marks dispute, for which Plaintiff paid Cannabis Legal Group. Thereafter, and within the same GAGE Marks dispute, Domingue acted adversely to Plaintiff — including by completing the September 20, 2021 Owosso license application on behalf of AEY Holdings LLC, the enterprise's Michigan licensee then operating under the assumed name "Gage Cannabis Company," as "Attorney" and using the enterprise email address legal@gageusa.com — without disclosure to, or written informed consent from,

Plaintiff. Section XI pleads Domingue's acceptance of Plaintiff's confidences and compensation while acting as counsel, and her subsequent adverse conduct. Domingue — who now practices under the name Jennifer Lynn Smith as Vice President of Legal at 365 Retail Markets — is a verified active member of the State Bar of Michigan in good standing, as reflected in the State Bar of Michigan's public member-directory record for "Jennifer Lynn Smith." *See* [Exhibit BB] (State Bar of Michigan member-directory record, retrieved August 7, 2026). Plaintiff pleads no bar-registration number.

29. **Defendant Barton W. Morris, Jr.** is a Michigan-licensed attorney (Michigan Bar No. P54701), owner of Defendant Cannabis Legal Group, and registered agent for Terra Mend LLC (Michigan LARA Entity ID 802136141), an entity within the TerrAscend-Gage enterprise. *See* [Exhibit W-2] (Michigan State Bar Member Directory listing for P54701, michbar.org); [Exhibit V] (Michigan LARA Corporate Records, Entity ID 802136141, Terra Mend LLC, registered agent Barton W. Morris, Jr., 520 N Main St, Royal Oak, MI 48067).

29A. **Defendant Michael Finos** is, and at the times relevant hereto was, the President (USA), Executive Vice President, and a Director of Gage Growth Corp. Defendant Finos executed the October 12, 2020 Gage-brand License Agreement in those capacities. *See* [Exhibit Z] (October 12, 2020 License

Agreement, Gage Growth Corp. signature page bearing "/s/ Michael Finos — President (USA), EVP and Director"). As the United States President of Gage Growth Corp., Defendant Finos directed and participated in the enterprise's United States operations, including the misappropriation and monetization of the GAGE Marks pleaded herein.

30. **Does 1–10** are persons or entities whose identities Plaintiff will substitute upon ascertaining them, including without limitation other directors, officers, agents, attorneys, and beneficial owners of the foregoing Defendants who participated in the predicate acts pleaded herein.

## IV. PLAINTIFF'S MARKS AND PRIOR USE

31. Plaintiff claims to be the senior user of the GAGE Marks in commerce, with continuous commercial use documented since 2011 and claimed earlier. Plaintiff's commercial-use record is independently verifiable through the following primary sources:

a. **The TTAB record.** Plaintiff's testimony and documentary evidence of record in TTAB Opposition No. 91278331 and TTAB Opposition No. 91252169 assert commercial use of the GAGE Marks across cannabis genetics, breeding, distribution, education, and publication channels, with first use claimed as early as 2008–2009. This includes Plaintiff's sworn declarations of record. (Plaintiff

acknowledges that the Board, on the registration-opposition record before it, found priority of common-law use not established by a preponderance; Plaintiff asserts marketplace-use priority de novo here on the fuller record pleaded below.) See [Exhibit F-1] (Sworn Declaration of Michael Fong, TTAB Opp. No. 91252169, 150 pp as filed) and [Exhibit F-2] (Sworn Declaration of Michael Fong, TTAB Opp. No. 91278331, 161 pp as filed); see also [Exhibits F-3 through F-9] (Plaintiff's September 28, 2023 declaration in support of motion to strike, Plaintiff's supplemental declaration, and the continuous-use trial exhibits of record filed with Plaintiff's TTAB declarations). (Plaintiff does not rely on the TTAB's registration-opposition disposition as a finding of priority; priority is established in this Court de novo on the marketplace-use record pleaded herein.) See also [Exhibits A-D] (TTABVUE 91278331 and 91252169).

b. **The Internet Archive.** The Wayback Machine preserves verifiable status-200 captures of gagegreen.org as a commercial cannabis-genetics website beginning April 3, 2011, with a fully operational e-commerce and content presentation captured July 9, 2011 (the page title read "Gage Green Genetics," with the masthead "Serving the finest cannabis for connoisseurs in the medical community"), continuous through 2013 and beyond.

c. **Plaintiff's federal registrations and applications.** Serial No. 90324487 matured into Registration No. 8,268,743 (GAGE GREEN GROUP, Int'l Class 025), issued May 26, 2026; Serial No. 88527221 matured into Registration No. 7,402,223 (GGG, hemp-derived-seed goods), registered May 28, 2024. Serial Nos. 90746550 and 97251818 remain pending applications. Each survived the TTAB judgment in Opposition No. 91278331 (see ¶ 3; [Exhibit A]). Title to these registrations is consolidated in Gage Prestige Holdings LLC through the assignments recorded with the USPTO Assignment Recordation Branch at Reels 8419/0700 and 8419/0719; the USPTO's TSDR owner-display field has not yet been conformed to those recorded assignments (the USPTO's own prosecution history notes "ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY"), and a no-fee request under 15 U.S.C. § 1057(g) to conform the display to the recorded chain of title was filed August 7, 2026 and is pending. Plaintiff pleads ownership from the recorded assignments, which control over the display field.

d. **Dated commercial sales in the ordinary course of trade (2011–2019).** Plaintiff's continuous commercial use of the GAGE Marks is further documented by dated invoices and purchase orders for goods sold and shipped under the "Gage Green" / GAGE GREEN GROUP name in the ordinary course

of trade, spanning 2011 through 2019 — and including federally-lawful Class 025 apparel documented by neutral third-party vendor records dated March and April 2014 — (See [Exhibits N-2, N-3, N-4, N-5, and N-6], authenticated by the concurrently-filed Declaration of Michael Fong and, as to the third-party vendor records, by their custodians under Fed. R. Evid. 902(11)) without material interruption. Each is a record of Plaintiff's own commercial activity, authenticated by the concurrently-filed Declaration of Michael Fong under Fed. R. Evid. 901(b)(1):

i. **February 8, 2011 — arm's-length sale to Harborside Dispensary, Oakland, California.** "Gage Green" Invoice No. 0127-5, "Invoice Date: Feb 8, 2011," issued from "Gage Green … www.gagegreen.org … admin@gagegreen.org," billed and shipped to "Harborside Dispensary Oakland, 1840 Embarcadero, Oakland, CA 94606," on "Net 30 Days" terms, for GAGE-branded genetics including "Lemon Stomper," "Pepe Le Chem," "Pepe Le Dank," "Cindy La Pew," "L.A. Haze," "Flight 813," "Morning Flight," "Blackberry Pie (5 Pack)," and "Mendo Montage," at a "Total Invoice Amount" of "3,200.00," paid in full ("Payment/Credit Applied 3,200.00; TOTAL 0.00"). See [Exhibit N-2].

ii. **August 17, 2011 — arm's-length sale to Attitude Seedbank.** "Gage Green" Invoice No. 0127-22, "Invoice Date: Aug 17, 2011," issued from "Gage Green … admin@gagegreen.org … www.gagegreen.org," billed and shipped to "Attitude Seedbank" on "Net 30 Days" terms, for GAGE-branded genetics including "Dumbo (Grape Stomper BX)" (quantity "40.00" at "50.00," extended "2,000.00"), "Lemon Stomper," "Pepe Le Chem," "Cindy La Pew," and "L.A. Haze," at a "Subtotal" of "3,724.00," "Shipping & Handling" of "30.00," and a "TOTAL" of "3,754.00." See [Exhibit N-3].

iii. **March 11, 2014 — GAGE-branded commerce in Michigan.** Two contemporaneous "Gage Green" purchase orders establish GAGE-branded commerce in Michigan years before any Defendant's Michigan use: (A) Purchase Order No. 6, dated "3-11-14," shipping GAGE GREEN genetics — including "Aspirare," "Bright Floral Lift," "D Cure," "Daybreaker," "Kaleidoscope," and "Grapestomper OG" — under the "Gage Green" name to an address in Oxford, Oakland County, Michigan ("Gage Green Sales … 675 vivian ln oxford mi 48371"), at a "Current order total" of "$2028.75"; and (B) Purchase Order No. 7, an arm's-length sale shipping GAGE GREEN genetics — including "5K Puff," "Blessings OG," "Grateful Breath," "Mindscape," "Pepe Le Dank," and "Starlet Kush" — to "Jc3 Jackson Michigan … 1620 E

Michigan Ave … Jackson, MI 49202 … info@jacksoncompassionclub.com," at a "SUBTOTAL" of "$3,303.75" and "TOTAL due" of "$2220.00." Purchase Order No. 7 bears no date on its face; on information and belief it is contemporaneous with Purchase Order No. 6, with which it is consecutively numbered and which is dated March 11, 2014. See [Exhibit N-5]. These Michigan transactions are pleaded further in Paragraph 8.

iv. **March–April 2014 — lawful Class 025 apparel commerce.** Two contemporaneous third-party vendor records document Plaintiff's use of the GAGE Marks on clothing — goods lawful under federal law at all times — years before any Defendant's use of the GAGE brand: (A) **Satori Movement, Inc. Invoice No. 27342**, dated and stamped paid March 28, 2014, "BILL TO: Gage Green Group … Oakland, CA," for 120 blank hemp/organic-cotton short-sleeve t-shirts (including four in purple), shipped by FedEx Ground (Tracking No. 977696326393) to "Forward Printing … Oakland, CA," at a "Total" of "$1,007.07" and a "Balance Due" of "$0.00"; and (B) **Forward Printing, Inc. Invoice No. 6906**, dated April 16, 2014, "CLIENT: Gage Green," for a 320-piece, two-design garment print run — 200 heavy cotton t-shirts bearing the "Always Runnin' Dank" five-color chest print and 119 customer-supplied garments bearing the metallic "GGG Cross" chest print — at a "total" of

"$1,897.40," paid in full by two PayPal transactions (Transaction ID 46P58222HM9907811, April 7, 2014, $949.58; Transaction ID 44578101SE1992011, April 16, 2014, $947.82). These are the records of neutral third-party vendors, self-authenticating through each vendor's records custodian under Fed. R. Evid. 902(11) and corroborated by the FedEx and PayPal transaction records referenced on their face; the purple hemp blanks Satori supplied and the metallic "GGG Cross" Forward Printing printed on customer-supplied garments are the same garments depicted in Plaintiff's contemporaneous 2014 use, authenticating that use by distinctive characteristics under Fed. R. Evid. 901(b)(4). Together they corroborate Plaintiff's contemporaneous commercial apparel operation under the Gage Green Group house — including Forward Printing's April 2014 affixation of the "GGG Cross" (Gage Green Group) mark to garments — on International Class 025 goods lawful under federal law, more than four years before the enterprise's October 2018 Michigan brand launch, and corroborating the November 13, 2012 first-use-in-commerce date claimed in Registration No. 8,268,743. See [Exhibit N-4].

v. **2019 — arm's-length wholesale sales of GAGE GREEN GROUP genetics.** Plaintiff's GAGE GREEN GROUP ("GGG") continued the same

commercial use through dated 2019 wholesale orders: a "WHOLESALE ORDER" for "Great Lakes Genetics," "DATE: January 8, 2019," with a stated "TOTAL" of "4444"; a "WHOLESALE ORDER" for "Great Lakes Genetics," "DATE: April 12, 2019," with a stated "TOTAL" of "10731"; a "GGG WHOLESALE ORDER" for "GLG," "DATE: September 12, 2019," with a stated "TOTAL" of "13212"; and a 2019 GGG wholesale order workbook identifying its buyer on its face as "GLG," pricing genetics by "HALF PK COST" and "FULL PK COST" with per-sheet "TOTAL" figures of "8030" and "9855." Each order lists GAGE GREEN GROUP genetics crosses — including "Grape Stomper OG," "Grateful Breath F2," "Out of Body Experience," "Triumphant," and "Synchronicity." See [Exhibit N-6].

These dated transactions — California (2011), Michigan (2014), and interstate wholesale (2019) — evidence bona fide, continuous commercial use of the GAGE Marks in the ordinary course of trade sufficient to establish a protectable interest and priority even without extensive market penetration. *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350 (6th Cir. 1998). Plaintiff's continuous-use record independently includes goods lawful under federal law at all relevant times — the International Class 025 apparel documented by the March and April 2014 third-party vendor records

pleaded in Paragraph 31(d)(iv) ([Exhibit N-4]) — and any "unlawful use" defense directed at the cannabis-related components of this use is addressed and foreclosed in Paragraph 58B.

32. Plaintiff claims a commercial-use priority date senior to the first documented use of any Defendant. Defendant Radicle Cannabis Holdings Inc. launched its "Gage Cannabis" brand in October 2018 — years after Plaintiff's documented first commercial use (2011) and Plaintiff's claimed first use (2008–2009). Defendant Cookies' first archived web presence is dated March 7, 2013, more than twenty-three months after Plaintiff's earliest archived commercial presence at gagegreen.org (April 3, 2011). See [Exhibit P] (Internet Archive Wayback Machine CDX records for gagegreen.org and cookiessf.com).

32A. Plaintiff candidly discloses that in TTAB Opposition No. 91252169 the Board dismissed Plaintiff's predecessor-opposers' Section 2(d) opposition on the ground that priority of common-law use was not established by a preponderance on the registration-opposition record, and expressly declined to reach likelihood of confusion. That disposition does not foreclose the claims pleaded here, for two independent reasons. First, issue preclusion under Restatement (Second) of Judgments § 27 reaches only the issue actually litigated and necessarily decided: the Board adjudicated priority as of the constructive-use filing date on

the specific registration classes then at issue, on the limited opposition record; it did not adjudicate — and could not, in a registration opposition — Plaintiff's right to use the GAGE Marks in the retail-cannabis marketplace across the approximately twenty (20) Michigan stores, the usages and fuller evidentiary record pleaded in Paragraphs 31–32, 36, and 50–51. Second, the rights at issue in this Court — the common-law **right to use** the marks in commerce, and Plaintiff's own commercial-interest injuries under Section 43(a) and RICO — are distinct from the right to register that the TTAB adjudicated, and Plaintiff asserts them without claiming personal ownership of the record title consolidated in Gage Prestige Holdings LLC (Paragraphs 10, 32B). *See FirstHealth of the Carolinas, Inc. v. CareFirst of Maryland, Inc.*, 479 F.3d 825 (Fed. Cir. 2007) (the right to register and the right to use are distinct); Michigan common-law trademark rights, MCL 429.44. The Board's registration-priority disposition therefore neither adjudicated nor precludes Plaintiff's Michigan common-law right to use, or the Lanham Act § 43(a), RICO, and voidable-transfer claims pleaded here. *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138 (2015).

32B. The Board's ownership findings are equally consistent with the claims pleaded here. The Board found that Gage Prestige Holdings LLC is the owner

of the GAGE common-law marks and the associated applications, and that the assignments consolidating that title withstood attack. Plaintiff does not dispute — and does not sue upon — that record title: no claim is pleaded under 15 U.S.C. § 1114, and no relief is sought in the capacity of owner or registrant. Plaintiff's Section 43(a) claim rests instead on the two showings the Supreme Court has held that statute requires — an injury within the statute's zone of interests, proximately caused by the violation: "to come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales," and "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–133 (2014). Although the quoted formulation arose under the false-advertising prong of § 1125(a)(1)(B), Lexmark's zone-of-interests and proximate-cause framework governs standing under § 1125(a) generally, including the false-designation-of-origin prong of § 1125(a)(1)(A) under which Count I is pleaded; Plaintiff's injury — the diversion of consumer recognition and trade from Plaintiff's own commercial use of the GAGE Marks — satisfies

that framework in the false-designation context no less than in the false-advertising one. Plaintiff pleads precisely those injuries: the diversion of consumer recognition, trade, and brand-equity value from Plaintiff's own commercial activity under the GAGE Marks (Paragraphs 31–32, 50–51, 70). Standing under Section 43(a) does not turn on registration or record title — the statute protects unregistered marks and reaches injuries to those who use them in commerce.

## V. OPERATIVE FACTS

### A. THE TERRASCEND-GAGE ENTERPRISE

33. Beginning no later than November 22, 2017, the Defendants formed and operated a continuous enterprise whose common purpose was the misappropriation, monetization, and concealment of the GAGE Marks and the goodwill those marks had accrued through Plaintiff's continuous commercial use. The enterprise was funded at its origin by Defendant Canopy Growth Corporation, which — through its controlled venture arm Canopy Rivers Inc. (n/k/a Defendant RIV Capital Inc.) — acquired in August 2017 a 23.81% equity stake in the Radicle entity that created and launched the "Gage Cannabis Co." brand (Paragraph 33A), and was thereafter conducted through a chain of related-party transfers from Radicle Cannabis Holdings Inc. (Reda-family seller) to Wolverine Partners Corp. (Hermiz / Reda-family buyer) to Gage

Growth Corp. (the renamed Wolverine vehicle) to TerrAscend Corp. (the public-market acquirer, in which Canopy Growth Corporation and, later, Defendant Canopy USA, LLC held equity interests), with Cookies (Milam) acting as the principal Michigan retail licensing partner. *See* [Exhibits L-M] (Wolverine Partners Corp. SEC Form 1-A, CIK 0001810254); [Exhibit H] (TerrAscend Form 8-K filed 2022-03-14); and [Exhibits CC, DD, EE, I].

33A. **Canopy's funding of the brand's origin.** In August 2017 — fourteen months before the "Gage Cannabis Co." brand was launched — Defendant Canopy Growth Corporation, acting through its controlled venture arm Canopy Rivers Inc. (n/k/a Defendant RIV Capital Inc.), acquired a 23.81% equity stake in Defendant Radicle Medical Marijuana Inc., the entity that created and first launched that brand. This fact appears in Defendants' own record: the press release announcing the launch, filed by the Reda-family declarant Ziad Reda as Exhibit A to his declaration in TTAB Opposition No. 91252169, states that "[i]n August 2017, Canopy Growth via Canopy Rivers acquired a 23.81 per cent equity stake in Radicle Medical Marijuana." *See* [Exhibit CC]. Canopy Growth Corporation controlled Canopy Rivers through ownership of 100% of its issued and outstanding Multiple Voting Shares. *See* [Exhibit EE-1] (Canopy Growth Corporation Form 10-K, fiscal year ended March 31, 2020 (excerpt)).

33B. **The Canopy-to-Gage principal bridge.** The same enterprise that Canopy's venture arm had seeded was placed under the chairmanship of a Canopy principal: former Canopy Growth Corporation founder and Chief Executive Officer Bruce Linton — who co-founded Canopy Rivers in 2017 — was appointed Executive Chairman of the corporation that acquired and monetized the brand, and executed the October 12, 2020 Gage-brand License Agreement in that capacity (Paragraphs 20, 40). *See* [Exhibits L-M] (Wolverine / Gage Growth SEC Form 1-A, reciting that the corporation appointed former Canopy Growth Corporation CEO Bruce Linton as Executive Chairman and that Bruce co-founded Canopy Rivers in 2017). On information and belief, at the time he assumed that chairmanship Defendant Linton concurrently held personal investments in cannabis-genetics ventures that competed with Plaintiff's Gage Green Group genetics business — including DNA Genetics and OG DNA — giving him direct knowledge of the cannabis-genetics market in which the GAGE Marks had accrued goodwill. This is established by the Defendants' own SEC filing: the Wolverine / Gage Growth offering circular's director biography for Defendant Linton states that he co-founded Canopy Rivers in 2017 and is "an active investor in OG DNA Genetics Inc." See [Exhibits L-M] (Wolverine Partners Corp. Form 1-A/A, CIK 0001810254,

Linton director biography). OG DNA Genetics Inc. is a cannabis-genetics seed house (founded in Amsterdam in 2004 by Don Morris and Aaron Yarkoni) operating in Plaintiff's competitive lane, and Defendant Linton's investment in it was separately announced in OG DNA Genetics Inc.'s own December 11, 2019 press release. See [Exhibit HH] (OG DNA Genetics Inc. press release, December 11, 2019). Canopy Growth Corporation's own website (canopygrowth.com) featured DNA Genetics as one of its named brands continuously from 2019 through 2022, reflecting a formal Canopy Growth–DNA Genetics partnership first entered in 2015 and extended through 2024. See [Exhibit II] (Internet Archive Wayback Machine status-200 captures of canopygrowth.com/brands dated September 17, 2019, September 25, 2020, and February 2022, together with Canopy Growth's news release "Canopy Growth and DNA Genetics Extend and Expand Relationship").

33C. **The structural tie into the public-market acquirer.** Defendant Canopy Growth Corporation and Canopy Rivers Inc. (n/k/a Defendant RIV Capital Inc.) were named counterparties, together with the Jason Wild-controlled funds, to the October 8, 2018 Arrangement Agreement that reorganized Defendant TerrAscend Corp.'s capital and obtained waivers of the covenants that had restricted TerrAscend from operating in the United States (the "TerrAscend

Reorganization," completed November 30, 2018), and following that reorganization Canopy Growth and Canopy Rivers each held 19,445,285 TerrAscend Exchangeable Shares. The Arrangement Agreement's covenant-waiver provision (§ 4.3) conditioned the Canopy entities' agreement not to enforce their contractual restrictions upon TerrAscend not deriving revenue from, or acquiring a business engaged in, marijuana in the United States — confirming that the reorganization to which the Canopy entities were parties was directed at enabling the very United States cannabis operations through which the GAGE brand was later misappropriated in Michigan. That Arrangement Agreement remained a listed material contract in TerrAscend's Fiscal Year 2025 Form 10-K — inside the acquirer's capital structure across the entire pendency of the TTAB proceedings. *See* [Exhibit DD] (Schedule 13D on TerrAscend, filed March 17, 2022); [Exhibit EE] (Canopy Growth Corporation Form 6-K furnished December 3, 2018, Exhibit 99.1); [Exhibit I] (TerrAscend Fiscal Year 2025 Form 10-K, exhibit index listing the "Arrangement Agreement, dated October 8, 2018, by and among TerrAscend Corp., Canopy Growth Corporation, Canopy Rivers Corporation, JW Opportunities Master Fund, Ltd., JW Partners, LP and Pharmaceutical Opportunities Fund, LP").

33D. **Canopy's continuing interest in the enterprise.** Canopy Growth's interest in the enterprise that monetized the GAGE Marks did not end with the reorganization: on December 9, 2022, TerrAscend converted, in exchange for 24,601,467 TerrAscend Exchangeable Shares, aggregate loans plus accrued interest stated in TerrAscend's Fiscal Year 2025 Form 10-K (in thousands) as CAD $125,500, held by Canopy Growth's United States holding company, Defendant Canopy USA, LLC. *See* [Exhibit I].

33E. **Interlocking directorate.** The enterprise's coordination across the Canopy-venture-arm, seller, and buyer nodes is documented by a common director. On information and belief, Richard Mavrinac sat simultaneously on the boards of RIV Capital Inc. (f/k/a Canopy Rivers Inc.), Defendant Gage Growth Corp. (the seller), and Defendant TerrAscend Corp. (the buyer) during the acquisition, and chaired TerrAscend's Audit Committee. Canopy Rivers Inc.'s own May 31, 2018 announcement named Richard Mavrinac as one of its independent directors, and TerrAscend's registration statement states that Richard Mavrinac is a director of both TerrAscend and Gage and values his personal interest in the transaction at $345,611. *See* [Exhibit GG] (Canopy Rivers Inc. announcement of May 31, 2018 naming Richard Mavrinac an independent director); [Exhibit FF] (TerrAscend Form 10 registration statement

(excerpt)). That interlock gave the enterprise board-level visibility spanning the funding, sale, and acquisition of the misappropriated brand. Mr. Mavrinac is pleaded here as an enterprise-coordination and knowledge fact and is not named as a Defendant, and requires no service. (TerrAscend's related-party disclosures separately state the exchange value of the 40,213 Gage subordinate-voting shares and 6,683 restricted share units for which Mr. Mavrinac received the interest valued above at $345,611.)

## B. THE SEPTEMBER 16, 2019 INSIDER TRANSFER

34. In October 2018, Defendant Radicle Medical Marijuana Inc., controlled by the Reda family, launched the "Gage Cannabis Co." brand. See [Exhibits L-M] (Wolverine Partners Corp. SEC Form 1-A, CIK 0001810254, Section VII).

35. On September 16, 2019, Wolverine Partners Corp. acquired the "Gage Cannabis" trademark rights and goodwill from Radicle Cannabis Holdings Inc. for CAD $250,000 cash, plus 250,000 contingent Subordinate Voting Shares payable upon successful registration of the "Gage" trademark in Canada and the United States. See [Exhibits L-M] (SEC Form 1-A, Wolverine Partners Corp., CIK 0001810254, Section VII).

36. The September 16, 2019 transaction was a non-arms-length insider transfer. Defendant Youssef Reda served as Chief Marketing Officer of the Radicle

sellers and simultaneously as a founding board member of Wolverine Partners Corp. (the buyer). See [Exhibits L-M] (Youssef Reda's buyer-side board seat); Radicle's October 18, 2018 public launch announcement identified him as Chief Marketing Officer of the seller. The CAD $250,000 purchase price was facially below-market for a brand with continuous commercial use documented since 2011 (and claimed since 2008) across multiple International Classification classes and the substantive distinctiveness reflected in the TTAB record. See [Exhibits L-M] (Wolverine Partners Corp. SEC Form 1-A) and [Exhibits A-D] (TTABVUE 91278331 and 91252169).

36A. **The acquisition instrument itself catalogues contested and "potential" claims to the very GAGE mark it purported to convey — direct evidence of knowledge and willfulness.** The September 16, 2019 transfer was effected by a written Asset Purchase Agreement dated as of September 16, 2019 among Wolverine Partners Corp. (as "Purchaser"), Radicle Cannabis Holdings Inc. (as "Vendor"), and Gage Co. Inc., filed as material-contract Exhibit 1A-6A to the Wolverine Partners Corp. SEC Form 1-A offering statement (SEC EDGAR CIK 0001810254). *See* [Exhibit KK] (Asset Purchase Agreement, September 16, 2019). That instrument is not silent about competing claims to the "GAGE" mark — it enumerates them. In Section 3.2(d), the Vendor and Gage Co

warranted only that, "to the best of its knowledge," and expressly "other than" a list of adversaries they there named — including "a potential opposition proceeding with respect to a potential opposition by Gage Specialties LLC in relation to the GAGE trademark, U.S. serial no. 87/695,693," "the Caipco LLC US application no. 87/806,329 for the GAGE mark," and "the Gage Cannabis Company Final Certificate of Registration through the Massachusetts Cannabis Control Commission (on May 31, 2019)" — "there is no claim or threatened or potential claim that the Gage Brand or use of the Gage Brand infringes, violates, or breaches the rights of any other person or entity." [Exhibit KK] § 3.2(d). The carve-out is the admission: a party that must except named "potential" oppositions and a competing "GAGE" application from its own non-infringement warranty knew, at the moment of acquisition, that title to the "GAGE" mark was contested. Section 3.2(c) is to the same effect, warranting non-infringement only "to the best of its knowledge and other than as set out below, the Gage Brand does not infringe or misappropriate any intellectual property right of any other person or entity." *Id.* § 3.2(c).

36B. **The enterprise simultaneously armed itself to litigate for the contested mark and pre-committed to defend oppositions — conduct incompatible with a good-faith belief in clean title.** In the same instrument, the assignment

conveyed to the Purchaser not only the brand but "the right to oppose any application to register any trademark which is or may be confusingly similar to the Gage Brand" (§ 3.1(e)) and "the right to take action and recover in respect of any and all causes of action and rights to sue for past infringement or similar violations of associated intellectual property rights in the Gage Brand" (§ 3.1(d)); the Purchaser covenanted that it "shall (or shall instruct its counsel to) take all reasonable steps involved in registering the trademarks 'GAGE' in Canada and the U.S., namely Canadian application no. 1868389 and U.S. serial nos. 88309277 and 87695693, including by defending any opposition or court action regarding such marks" (§ 6.2(f)); and the parties agreed that "[t]he Purchaser shall have the first right to initiate and to prosecute legal proceedings against third parties for infringement of the Intellectual Property Rights in the Gage Brand" (§ 9.5). *See* [Exhibit KK] §§ 3.1(d)-(e), 6.2(f), 9.5. An acquirer that contracts, in advance, to defend "any opposition or court action" over the "GAGE" serials, and that equips itself with the "first right" to sue infringers and the right to oppose confusingly similar marks, does not act in the good-faith belief that the mark is unencumbered; it acquires with knowledge of, and preparation for, the contest.

36C. **Materiality to the claims pleaded.** These admissions in Defendants' own acquisition instrument bear directly on four issues in this action. First, they establish that the misappropriation was knowing and willful for purposes of 15 U.S.C. § 1117(a)-(b), reinforcing the willfulness pleaded in Paragraph 45D: the enterprise's own contract documents knowledge, at inception, that "potential" claims to the "GAGE" mark existed and that the mark would have to be defended against "opposition or court action." Second, they reinforce the unclean-hands foundation pleaded in Paragraph 58B: the enterprise cannot invoke the equity of clean title while its own agreement shows it warranted that "there is no claim ... that the Gage Brand ... infringes" only by carving out the very "potential" claims it simultaneously acknowledged. Third, they supply the seventh *Frisch's* factor pleaded in Paragraph 59A — the defendant's intent in selecting and using the mark — because a purchaser who contracts to defend oppositions and to prosecute infringers over a contested "GAGE" serial adopts that mark with knowledge of competing rights, not in innocence of them. Fourth, they corroborate the specific-intent and scienter elements of the RICO claims in Counts II and III (Paragraphs 66-74): the enterprise formed, funded, and monetized the GAGE Misappropriation Enterprise with contemporaneous documentary knowledge that title to the "GAGE" mark was contested. Plaintiff

does not allege that the Asset Purchase Agreement names Plaintiff or admits knowledge of Plaintiff's senior use; the instrument's enumerated exceptions concern Gage Specialties LLC and the other third parties it lists, and the enterprise's knowledge of Plaintiff's senior claim is separately pleaded (Paragraphs 40, 45D). The narrower point established within the four corners of Defendants' own contract is sufficient here: the enterprise acquired the "GAGE" mark while warranting clean title and, in the same breath, excepting from that warranty the contested and "potential" claims it knew to exist.

## C. THE WOLVERINE FORM 1-A OMISSIONS

37. On September 1, 2020, Wolverine Partners Corp. filed SEC Form 1-A. Wolverine Partners amended that filing on September 14, 2020 and September 18, 2020. See [Exhibits L-M] (CIK 0001810254).

38. The Wolverine Form 1-A and its amendments materially omitted (a) the prior commercial use of the GAGE Marks held by Plaintiff and Gage Green Group (documented since 2011 and claimed since 2008), and (b) the TTAB priority-opposition risk presented by Plaintiff's then-pending Opposition No. 91252169 filed November 4, 2019. See [Exhibits L-M] and [Exhibits C-D].

39. The Wolverine Form 1-A also disclosed substantial related-party transactions, including $10,150,000 in real-estate transactions between

Defendant Michael Hermiz's wholly-owned entities and Wolverine Partners Corp., and $1,350,000 in related-party transactions involving Defendant Rami Reda. See [Exhibits L-M] (SEC Form 1-A, Wolverine Partners Corp., CIK 0001810254).

## D. THE OCTOBER 12, 2020 LICENSE AGREEMENT

40. On October 12, 2020, Defendants Monaco (President and Director), Linton (Executive Chairman and Director), Watza (Chief Financial Officer), and Hermiz (Director) executed an internal License Agreement concerning the "Gage" mark, transmitted via interstate mail and electronic carrier from Ontario, Canada to Michigan. See [Exhibit Z] (October 12, 2020 Gage-brand License Agreement, Gage Growth Corp. signature page, produced by Dentons LLP in TTAB Opposition No. 91252169 discovery).

## E. THE TERRASCEND ACQUISITION

41. On September 1, 2021, TerrAscend Corp. announced a definitive arrangement agreement to acquire Gage Growth Corp. in an all-stock transaction valued at approximately **$545,000,000** based on TerrAscend's closing share price on August 31, 2021 — an exchange ratio of 0.3001 TerrAscend shares per Gage share, implying consideration of $2.11 (C$2.66) per Gage share and an approximately 18% premium, as announced in

TerrAscend's September 1, 2021 press release and current report (SEC EDGAR CIK 0001778129). The transaction closed on March 10, 2022; by the closing date, following a decline in TerrAscend's share price between announcement and closing, the total consideration was valued at approximately **$386,000,000** ($1.50 per Gage share as of March 9, 2022). See [Exhibit H] (TerrAscend Corp. Form 8-K filed March 14, 2022, SEC EDGAR CIK 0001778129). Plaintiff refers to the transaction by its announced value of approximately $545,000,000, and notes the realized closing value of approximately $386,000,000 for completeness; the constructive-trust and damages relief Plaintiff seeks is measured by the portion of the consideration attributable to the misappropriated GAGE goodwill, in an amount to be proven, and not by either gross figure.

42. The TerrAscend 8-K omitted disclosure of the TTAB Opposition risk presented by Plaintiff's then-pending Opposition No. 91252169.

## F. THE AEY CAPITAL / AEY HOLDINGS ALTER-EGO OPERATION

43. Between 2019 and the present, the TerrAscend enterprise operated approximately twenty (20) Michigan-licensed cannabis retail locations under the "Gage" / "Gage Cannabis" brand. The Michigan-licensed entity within that operation, AEY Capital LLC, executed a Michigan Cannabis Regulatory Agency Consent Order and Stipulation in Formal Complaint ENF 22-00499

(AUP000138). The Consent Order was signed on behalf of AEY Capital LLC by Defendant Lynn Gefen in her capacity as Manager of AEY Capital LLC, while she simultaneously held the position of Chief Legal Officer of TerrAscend Corp. See [Exhibit G] (Michigan CRA Consent Order ENF 22-00499).

44. On January 15, 2026, AEY Holdings LLC (also under Defendant Lynn Gefen's management) renewed the assumed-name registration for "Gage Cannabis Company" with the Michigan Department of Licensing and Regulatory Affairs, effective through December 31, 2031, notwithstanding the imminent TTAB Show-Cause posture and the public reporting by TerrAscend Corp. that simultaneously characterized the Michigan operations as discontinued. See [Exhibit W-1] (Michigan LARA Assumed Name Renewal — AEY Holdings LLC) and [Exhibit K] (TerrAscend Form 8-K filed 2025-06-30).

## G. THE 2025 MICHIGAN EXIT

45. On June 27, 2025, TerrAscend Corp. publicly announced its exit from the State of Michigan, including the closure of its twenty (20) Michigan retail locations and the termination of 236 employees (per the Worker Adjustment and Retraining Notification filed June 30, 2025). See [Exhibit K] (SEC EDGAR Form 8-K, CIK 0001778129, filed 2025-06-30), and the corresponding Worker

Adjustment and Retraining Notification Act ("WARN") filing with the Michigan Department of Labor and Economic Opportunity dated June 30, 2025.

### H. THE 2025–2026 ASSET EXTRACTION, RECEIVERSHIP, AND ABANDONMENT

45A. Following the June 27, 2025 Michigan exit, the FG Loan administrative agent commenced the receivership over the Michigan GAGE-branded entities pleaded in Paragraph 16A (Oakland County Circuit Court No. 2026-222791-CB). Through 2026 the receiver liquidated the former "Gage"-branded Michigan retail operations to a succession of unrelated operators, each of which rebranded away from the GAGE Marks — including transfers of former Gage locations to Lume Cannabis Co. and Mint Cannabis, and the rebranding of the Burton location (1234 North Center Road) to "Gramz," on information and belief as reflected in Michigan Cannabis Regulatory Agency adult-use licensing records. On information and belief, the Michigan Receivership Entities were insolvent at the time of these transfers and the receivership estate was underwater — its liabilities exceeded its assets and the estate was dominated by the senior secured lien — such that liquidation proceeds are applied to the secured debt and leave nothing for Plaintiff or other unsecured claimants. This dissipation of the assets into which the misappropriated GAGE brand equity

had been converted was undertaken with actual intent to hinder, delay, or defraud Plaintiff and other creditors, and constitutes a further voidable transfer within the limitations period (Count IV).

45B. Contemporaneously, the enterprise abandoned the very trademark it had misappropriated. On June 15, 2026, as reflected in the public USPTO TSDR record for Serial No. 87695693 (of which Plaintiff requests judicial notice), the United States Patent and Trademark Office recorded the abandonment of the GAGE application, U.S. Serial No. 87695693, for failure to file a Statement of Use following the Notice of Allowance; that record lists the application's status as "Abandoned". The abandonment confirms that Defendants extracted the value of the misappropriated brand while allowing the federal application to lapse, and it eliminates any bona fide intent to maintain the bare-GAGE federal application, Serial No. 87695693. Plaintiff does not plead abandonment of the GAGE brand itself; the enterprise's continuing infringing use of the GAGE Marks is pleaded in Paragraph 45D.

45C. The 2025–2026 conduct is a continuation of the same pattern pleaded in Counts II and III: having misappropriated the GAGE Marks (2018–2019) and monetized them through the acquisition (2022), the enterprise completed the scheme by extracting the Michigan operating value and dissipating the residual

assets beyond creditors' reach (2025–2026) while abandoning the mark — conduct that satisfies the continuity requirement of *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).

45D. **The Michigan exit was geographically limited; the enterprise continues.** Defendants' June 27, 2025 withdrawal was from the State of Michigan only, not a cessation of business. As disclosed in TerrAscend Corp.'s Fiscal Year 2025 Form 10-K, Defendant TerrAscend continues to conduct vertically-integrated, licensed cannabis cultivation and retail operations in Pennsylvania, New Jersey, Maryland, and California, and retail operations in Ohio and Ontario, Canada. See [Exhibit I] (TerrAscend FY2025 Form 10-K, SEC EDGAR CIK 0001778129). The misappropriated GAGE goodwill was thus converted into, and remains embedded in, an ongoing multi-state cannabis enterprise; the wind-down of the specific Michigan GAGE retail banner and the lapse of the federal GAGE application (Paragraphs 45A–45B) neither returned that goodwill or its traceable proceeds to Plaintiff nor moots Plaintiff's claims for a constructive trust, damages, or injunctive relief. On information and belief, Defendants continue to exploit the GAGE-derived brand equity and the co-defendant Cookies marks in those continuing operations. Defendants undertook and continued this conduct with knowledge of Plaintiff's senior claim to the

GAGE Marks — knowledge established by their participation in TTAB Opposition No. 91252169 (which they prosecuted) and Opposition No. 91278331 (which they filed and allowed to proceed to judgment), and by the internal License Agreement pleaded in Paragraph 40 — rendering the misappropriation knowing and willful for purposes of 15 U.S.C. § 1117 and the specific-intent element of Counts II and III.

45E. **The TerrAscend Chief Legal Officer's August 18, 2022 dated admission of knowledge.** Independent of the TTAB record and the internal License Agreement, Defendants' knowledge of Plaintiff's senior and competing claim to the GAGE Marks is fixed to a specific date by a written admission from the highest legal officer of the enterprise's public-market parent. On August 18, 2022 — approximately five months after the March 10, 2022 acquisition closing (Paragraph 41) — Defendant Lynn Gefen, writing "on behalf of TerrAscend Corporation ('Terrascend') as its newly appointed Chief Legal Officer," transmitted to Plaintiff by electronic mail (to michael@gagegreengroup.com) a letter captioned "Re: Potential Resolution / U.S. Trademark Opposition Serial No. 91/252,169" (i.e., the then-pending Opposition No. 91252169 between the parties), in which she stated: "TerrAscend recently acquired Gage Growth Corporation ('Gage Growth')

earlier this year. As a result, I have direct responsibility for all things Gage Growth." *See* [Exhibit LL] (Letter from Lynn Gefen, Chief Legal Officer, TerrAscend Corporation, to Michael Fong, dated August 18, 2022, bearing the printed caption "CONFIDENTIAL CORRESPONDENCE DISCUSSION PURSUANT TO Fed. R. Evid. 408" and the signature block "/s/ Lynn Gefen — Lynn Gefen — Chief Legal Officer — TerrAscend Corporation"). In the same letter, Defendant Gefen proposed on TerrAscend's behalf that the enterprise would "Expressly abandon the GAGE (Plain Letter) application," would "Consent to your use of the GAGE GREEN GROUP mark (in standard or stylized form)," and would "Consent to your registration of the GAGE GREEN GROUP (stylized) mark," and she characterized the proposal as an agreement by which the parties would "step back from any claims of exclusive rights in the broadest form of the GAGE trademark and, instead, ... co-exist and ... allow each other to use narrower versions of the mark designed to avoid potential consumer confusion." *Id.* The letter is thus a contemporaneous written acknowledgment, by TerrAscend's own Chief Legal Officer, that as of August 18, 2022 the enterprise knew of Plaintiff's use of and application to register the GAGE GREEN GROUP mark, knew the parties' marks presented a potential for "consumer confusion," and was prepared to abandon its own GAGE (Plain

Letter) application and to consent to Plaintiff's use and registration of GAGE GREEN GROUP.

45F. **Purpose for which Paragraph 45E is pleaded; Federal Rule of Evidence 408.** Plaintiff pleads the August 18, 2022 letter, notwithstanding its "Fed. R. Evid. 408" caption, only for a purpose that Rule expressly permits and not for any purpose it forbids. Plaintiff does not offer the letter, and does not rely upon it, "to prove or disprove the validity or amount of" the disputed trademark claim, Fed. R. Evid. 408(a); Plaintiff does not plead it as an admission of liability on the merits of the opposition, as a concession of the parties' respective priority, or as a measure of damages. Plaintiff offers it solely "for another purpose," Fed. R. Evid. 408(b): to establish (a) that as of August 18, 2022 the Chief Legal Officer of TerrAscend Corporation — the enterprise's public-market parent, which she described as having "direct responsibility for all things Gage Growth" — had actual, contemporaneous knowledge of Plaintiff's competing use of, and application to register, the GAGE GREEN GROUP mark and of the potential for consumer confusion; (b) that the enterprise's continuing use of the GAGE Marks thereafter (Paragraphs 43–45D), including AEY Holdings LLC's January 15, 2026 assumed-name renewal of "Gage Cannabis Company" through December 31, 2031 (Paragraph 44), was

undertaken with that knowledge and was therefore knowing and willful for purposes of 15 U.S.C. § 1117(a); (c) the "defendant's intent," the seventh factor of the likelihood-of-confusion analysis (Paragraph 59A), in that the enterprise continued to deploy the GAGE mark against a source it knew claimed that mark; and (d) the knowledge and specific-intent elements of the RICO claims pleaded in Counts II and III (Paragraphs 66–74). The absence of good faith is further evidenced by the enterprise's about-face: notwithstanding its Chief Legal Officer's August 18, 2022 written offer to abandon the GAGE (Plain Letter) application and to consent to Plaintiff's use and registration of GAGE GREEN GROUP, the enterprise thereafter prosecuted the TTAB oppositions against Plaintiff's GAGE filings pleaded in Paragraphs 3 and 45D and continued its own use of the GAGE Marks in the Michigan retail market. The letter is independently admissible as a statement of a party opponent under Federal Rule of Evidence 801(d)(2), made by TerrAscend's own Chief Legal Officer within the scope of her authority, and it corroborates the single-business-enterprise and alter-ego allegations of Paragraph 11: its author simultaneously served as Chief Legal Officer of TerrAscend Corporation and as Manager of the AEY Michigan licensee entities (Paragraphs 15–16, 21, 43) and admitted "direct responsibility for all things Gage Growth." *See* [Exhibit LL]. Ms. Gefen renewed the offer in

writing on August 30, 2022, in an electronic-mail message on which Plaintiff was copied, stating that "[w]e continue to believe there is a path towards co-existence and welcome discussions" while announcing that, "[i]n view of Gage Specialties' silence to my offer to resolve the matter," Gage Growth Corp. "intends to file a Notice of Opposition" against Plaintiff's Application Serial No. 90/324,487 "by tomorrow" — the opposition thereafter docketed as Opposition No. 91278331 (Paragraphs 3, 45D). The August 30, 2022 message is retained natively in Plaintiff's own mailbox (Message-ID <MN2PR16MB326138D3518D45D600E26380B9799@MN2PR16MB3261.namprd16.prod.outlook.com>) and is included as a supplemental page to Exhibit LL.

## I. THE 2026 TTAB JUDGMENT AND POST-JUDGMENT CONCEALMENT

46. On March 3, 2026, the TTAB issued a Show-Cause Order in Opposition No. 91278331 directing Opposer (Defendant Gage Growth Corp.) to show cause why the opposition should not be dismissed for failure to take testimony. *See* [Exhibit B] (TTABVUE 91278331 Entry 40).

47. On March 12, 2026 — the same day the Show-Cause Order was issued — TerrAscend Corp. filed its Fiscal Year 2025 Form 10-K with the SEC, omitting

any disclosure of the Opposition or its show-cause posture. See [Exhibit I] (SEC EDGAR CIK 0001778129, FY2025 Form 10-K filed 2026-03-12) (10-K).

48. On May 6, 2026, the TTAB entered final judgment with prejudice against Opposer (Gage Growth Corp.) in Opposition No. 91278331. *See* [Exhibit A] (TTABVUE 91278331 Entry 41).

49. On May 7, 2026 — one business day after the final TTAB judgment — TerrAscend Corp. filed its Q1-2026 Form 10-Q with the SEC, omitting any subsequent-event disclosure of the judgment. See [Exhibit J] (SEC EDGAR CIK 0001778129, Q1-2026 Form 10-Q filed 2026-05-07) (10-Q).

**J. THE COOKIES WEB-PRESENCE PRIORITY ANCHOR**

50. Defendant Cookies' first archived web presence (cookiessf.com) is dated March 7, 2013, and its first substantive content (an apparel/clothing line described as launched as a federal-trademark workaround for cannabis-related branding) is dated October 12, 2013. See [Exhibit P] (Internet Archive Wayback Machine CDX records for gagegreen.org and cookiessf.com); [Exhibit U] (Cookies' own publication "Where It All Started — A Look Back at the Origins of Cookies," cookies.co/blog).

51. Plaintiff's earliest archived commercial web presence at gagegreen.org is dated April 3, 2011, with the full commercial cannabis-genetics website

operational by July 9, 2011 ([Exhibit N]; [Exhibit P] (Internet Archive Wayback Machine CDX records)). The approximately twenty-three (23) month gap before Defendant Cookies' first archived web presence (March 7, 2013) supports Plaintiff's senior commercial-use priority over Defendant Cookies' branded use. Moreover, even by Cookies' own account, its earliest *claimed* use of the COOKIES mark postdates Plaintiff's documented use: Cookies SF LLC's federal registration for the COOKIES apparel mark (U.S. Serial No. 86697479, Reg. No. 5,319,867) claims a first-use date of December 1, 2011 and a first-use-in-commerce date of February 8, 2012 — both later than Plaintiff's commercial web presence documented in February and April 2011, and both self-asserted rather than adjudicated. Plaintiff requests judicial notice of the United States Patent and Trademark Office records for Serial No. 86697479.

52. The instances of Defendants' engagement with Plaintiff's social-media presence pleaded in this Complaint are drawn from Plaintiff's recovered records; Federal Rule of Civil Procedure 15 governs any amendment.

## K. THE DOMINGUE CONFLICT OF INTEREST

52A. Plaintiff retained legal consultation from Defendant Jennifer Lynn Domingue during her association with Defendant Cannabis Legal Group. Plaintiff paid Cannabis Legal Group for that consultation, conducted by

Domingue and concerning Plaintiff's rights in the GAGE Marks dispute, through multiple in-person meetings at Cannabis Legal Group's offices, 520 N Main St, Royal Oak, Michigan. *See* [Exhibit AA] (Plaintiff's correspondence of record documenting the attorney-client relationship with Defendant Domingue and the conflict as it was flagged in real time — Plaintiff's Gmail thread of March 29, 2021 with its thirteen attached screenshots, and Plaintiff's attorney Rex Brabson's April 1, 2021 reply that Wolverine should be removing Ms. Domingue from anything to do with the Opposition proceeding; and the September 20, 2021 City of Owosso Council Packet showing Defendant Domingue completing a marihuana license amendment application on behalf of Defendant AEY Holdings LLC, d/b/a "Gage Cannabis Company," as "Attorney," using the enterprise email address legal@gageusa.com).

53. After receiving Plaintiff's compensation and Plaintiff's confidential information on the GAGE Marks dispute, Defendant Domingue undertook representation adverse to Plaintiff within the same GAGE Marks dispute — the September 2021 Owosso licensing representation of Defendant AEY Holdings LLC d/b/a "Gage Cannabis Company," and, on information and belief, work for Defendant Gage Growth Corp. (acting under its former name Wolverine

Partners Corp.) in connection with TTAB Opposition No. 91252169 — without disclosure to Plaintiff and without written informed consent. See [Exhibit AA].

54. As documented in the Brabson correspondence and the Owosso conflict record ([Exhibit AA]), Defendant Domingue's conduct violated Michigan Rule of Professional Conduct 1.9 (duties to former clients) and Michigan Rule of Professional Conduct 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). Defendant Cannabis Legal Group, through Defendant Barton W. Morris, Jr. as supervising attorney and owner, is liable in respondeat-superior for Defendant Domingue's misconduct.

## L. THE DEFENDANT DOMAIN PORTFOLIO

55. Defendants registered, trafficked in, or used domain names that incorporate Plaintiff's GAGE Marks and confusingly-similar variants, including without limitation: **gageorange.com** and **gagegreens.com** (both registered December 19, 2019 — forty-five (45) days after Plaintiff filed Opposition No. 91252169 against the Defendant enterprise). Each domain's registration date is confirmed by the authoritative Verisign registry's RDAP records (gageorange.com registered 2019-12-19T19:16:42Z; gagegreens.com registered 2019-12-19T19:17:01Z — twenty seconds apart) ([Exhibit Y]), and each domain's attribution to the Defendant enterprise is established by Defendants' own

document production: their registrar's export of "the list of domain name[s] for Gage USA," produced by Wolverine Partners Corp. in TTAB discovery, lists both domains in the enterprise's own GoDaddy account with registration timestamps matching the registry records to the second. See [Exhibit E] (Wolverine Partners Bates production WOLV000118–WOLV000120). Plaintiff further alleges, on information and belief, that any "since 2006" use of gagegreen.com asserted in the TTAB record was not a bona fide commercial use, the domain having resolved only to Afternic parking nameservers rather than an active commercial website; Plaintiff does not concede any senior bona fide use by Defendants. The registrations pleaded in this Paragraph are two of the fifty-eight (58) GAGE-formative domain names in the enterprise's own registrar portfolio list, produced by Defendant Wolverine Partners Corp. as WOLV000118–WOLV000120 and pleaded in Paragraphs 61–65. *See* [Exhibit E].

56. Defendants registered and used the "sucks"-suffix domains, including gagegreengroupsucks.com, with a bad-faith intent to disparage Plaintiff and Plaintiff's exact mark "GAGE GREEN GROUP."

## VI. COUNT I — FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, AND INFRINGEMENT OF REGISTERED AND UNREGISTERED MARKS UNDER SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(A)

57. Plaintiff incorporates by reference Paragraphs 1 through 56 above.

58. Plaintiff claims senior use of the GAGE Marks in commerce, supported by the continuous-use record pleaded in Paragraphs 31–32 and 50–51. Trademark rights flow from prior appropriation and actual use in the market, and bona fide continuous use suffices to establish a protectable interest and priority of use even without extensive market penetration. *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350 (6th Cir. 1998). Plaintiff asserts priority of actual marketplace use de novo in this Court; the TTAB found the GAGE Marks inherently distinctive and not generic in Opposition No. 91252169 but expressly declined to reach likelihood of confusion in that registration proceeding.

58A. Two federal registrations further evidence the protectability of the marks at issue and are pleaded here as evidence (Section 43(a)/§1125(a) protects both registered and unregistered marks and does not require the plaintiff to be the registrant of record): (a) Registration No. 8,268,743 for GAGE GREEN GROUP (International Class 025), issued May 26, 2026 (Serial No. 90324487); and (b) Registration No. 7,402,223 for GGG covering hemp-derived-seed

goods, registered May 28, 2024 (Serial No. 88527221). See USPTO Reg. Nos. 8,268,743 and 7,402,223 (public USPTO records). Title to these registrations is consolidated in Gage Prestige Holdings LLC through the recorded nunc-pro-tunc wind-up pleaded in Paragraphs 10 and 31(c) (USPTO Reels 8419/0700 and 8419/0719; TSDR display-field conformance pending under 15 U.S.C. § 1057(g)); Plaintiff is the senior principal to whom the underlying bona fide use and goodwill are attributable and pleads the registrations as evidence of the marks' protectability, not as the basis of a registrant's Section 32 claim.

58B. **Lawful-use foundation; anticipated "unlawful use" defense.** Plaintiff's protectable interest and priority do not depend on federally unlawful conduct. Plaintiff's continuous-use record includes goods and services lawful under federal law at all relevant times: clothing (International Class 025, the class of Registration No. 8,268,743); educational materials, media, and publication services; and, from and after the Agriculture Improvement Act of 2018, hemp and hemp-derived seed goods within the definition of 7 U.S.C. § 1639o — the subject matter of Registration No. 7,402,223 — which that Act removed from the Controlled Substances Act's definition of marijuana. *See AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682 (9th Cir. 2022) (hemp-derived products lawful under the 2018 Act may support trademark priority). Plaintiff's priority

in the lawful Class 025 goods does not depend on the timing of any cannabis-related use. Registration No. 8,268,743 (Serial No. 90324487) is a use-based registration under 15 U.S.C. § 1051(a) for clothing that claims a date of first use in commerce of November 13, 2012, and is prima facie evidence of the validity of the registered mark, of the registrant's ownership of the mark, and of the exclusive right to use the mark on those goods. 15 U.S.C. §§ 1057(b), 1115(a). Plaintiff pleads these statutory presumptions to establish the validity and protectability of the GAGE Marks generally — an element common to registered and unregistered marks under Section 43(a) — and not as a claim of personal ownership or registrant status, which Plaintiff disclaims (Paragraphs 10, 32B, 58A). Plaintiff's priority in the lawful Class 025 goods rests primarily on the November 13, 2012 first-use-in-commerce date claimed in Registration No. 8,268,743, corroborated by neutral third-party vendor records dated March and April 2014, pleaded in Paragraph 31(d)(iv) and filed as [Exhibit N-4] — including Forward Printing's April 2014 print run affixing the "GGG Cross" (Gage Green Group) mark to garments — documenting Plaintiff's contemporaneous apparel operation senior to the enterprise's October 2018 launch of the misappropriated GAGE brand, so that Plaintiff's priority in the lawful goods rests on documented commercial use and neither depends upon,

nor is defeated by disregarding, any cannabis-related use. The federal "lawful use in commerce" requirement is goods-specific: it withholds federal rights only in the particular goods that are unlawful under the Controlled Substances Act and does not taint separately-pleaded lawful goods in the same portfolio. *See In re JJ206, LLC*, 120 U.S.P.Q.2d 1568 (T.T.A.B. 2016); *In re PharmaCann LLC*, 123 U.S.P.Q.2d 1122 (T.T.A.B. 2017). Moreover, Plaintiff's lawful Class 025 apparel and hemp goods are closely related to, and within the natural zone of expansion of, the cannabis goods on which the parties compete: cannabis brands and their apparel move through the same channels to the same consumers, as Defendant Cookies' own origin story confirms — Cookies itself launched an apparel line as a federal-trademark workaround for its cannabis-related branding (Paragraph 50). Plaintiff's senior use of the GAGE Marks on related lawful goods therefore supports priority reaching the cannabis-retail marketplace under the related-goods and natural-zone-of-expansion doctrines, independent of any priority in the cannabis goods themselves. Any cannabis-related use is therefore disregarded for purposes of federal priority — not treated as disqualifying the lawful Class 025 apparel and hemp-goods use on which Plaintiff's federal priority independently rests. *Cf. Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877 (N.D. Cal. 2019). To the extent

any Defendant invokes the judicially-created "unlawful use" doctrine against the cannabis-related components of Plaintiff's use, that doctrine has no purchase in this forum: the Lanham Act's text nowhere conditions trademark protection on compliance with other federal statutes; the Court of Appeals for the Sixth Circuit has never adopted the doctrine; and the only Michigan federal court squarely presented with it declined to adopt it, reasoning that Congress "did not expressly require compliance with other federal laws as a condition for obtaining or enforcing trademark rights," and that the court "declines to add a requirement that is not found in the statute itself." *Breeze Smoke, LLC v. Yatin Enters., Inc.*, No. 1:22-cv-1182, slip op. at 11–12 (W.D. Mich. Apr. 25, 2023) (ECF No. 74) ("For all these reasons, the Court declines to adopt the unlawful use doctrine."). *Accord Perry v. H.J. Heinz Co. Brands, LLC*, 994 F.3d 466 (5th Cir. 2021) (declining to adopt the unlawful-use doctrine); *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071 (11th Cir. 2016) (affirming rejection of an unlawful-use defense without adopting the doctrine). Equity independently forecloses the defense on these facts: from 2019 through 2025, Defendants themselves sold marijuana — conduct unlawful under the federal Controlled Substances Act, 21 U.S.C. §§ 802(16), 841 — at approximately twenty Michigan retail locations under the very GAGE mark at issue. Defendants

cannot claim the fruits of that commerce for themselves while invoking its illegality to deny Plaintiff's senior rights in the same marketplace; a party that comes into equity must come with clean hands.

59. Defendants used in commerce false designations of origin, and reproductions, copies, or colorable imitations of the GAGE Marks, in connection with the sale, offering for sale, distribution, or advertising of cannabis goods and related services, in a manner likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods or services. Plaintiff, as the senior user whose commercial interest in the GAGE Marks was diverted by Defendants' conduct, falls within the zone of interests protected by Section 43(a) and was proximately injured by the violation, and so has standing to sue. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *accord Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (4th Cir. 2016) (applying *Lexmark* to sustain a competitor's Section 43(a) claim for injury to commercial reputation and sales). Plaintiff sues as a competitor whose commercial interest in the GAGE Marks was diverted, not as a consumer; the consumer-standing limitation of *Serbin v. Ziebart International Corp.*, 11 F.3d 1163 (3d Cir. 1993), is therefore

inapposite and, in all events, predates and was superseded by the *Lexmark* framework. The GAGE Marks are inherently distinctive and require no proof of secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *see* [Exhibits C-D] (TTAB distinctiveness finding, Opp. No. 91252169).

59A. Likelihood of confusion in this Circuit is governed by the eight-factor test of *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982), and *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100 (6th Cir. 1991): (1) strength of the mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) purchaser care; (7) the defendant's intent; and (8) likelihood of expansion. The parties used the identical GAGE mark on identical cannabis goods through the same Michigan retail channels — an identity of mark, goods, and channel from which likelihood of confusion follows on the face of these allegations.

59B. **Actual confusion — the fourth Frisch factor.** The fourth factor enumerated in Paragraph 59A — evidence of actual confusion — is the most probative of the *Frisch* factors, and even a small number of documented instances is entitled to substantial weight; Plaintiff need not prove actual

confusion in order to establish a likelihood of it. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275 (6th Cir. 1997) (evidence of actual confusion is the most probative, though not a required, showing of likelihood of confusion). Here the record is neither small nor equivocal. Real third-party consumers, writing in their own words on Plaintiff's own social-media accounts and in direct messages to those accounts, repeatedly mistook Defendants' "Gage" / "Gage Cannabis" for Plaintiff's senior GAGE house of marks, or wrote to Plaintiff in order to resolve their own confusion. Representative instances, quoted verbatim from the recovered originals compiled as [Exhibit O], include:

a. Facebook user **David Flowers**, commenting on Plaintiff's Facebook page: "When I saw an ad for Gage Cannabis in Michigan I immediately thought it was referring to the craft cannabis company gage green which supplies high quality seeds to our patients and caregivers." A second commenter on the same post, **Mich Jones** — identified by Facebook as a "Top Fan" — added: "Yes they are confusing consumers. I'm glad I have your genetics and not some knock off." [Exhibit O-1].

b. Facebook user **Woody McDonald**: "Very confusing, I saw the GAGE dispensary and thought they were related to you guys. Then I saw the quality

and I knew it couldn't be the case." A further commenter, **Erik Arizona**, added: "I was confused also......." [Exhibit O-2].

c. Facebook user **David Tracy**: "Ya, Gage in Michigan. Thought they were affiliated with you guys until I did some digging. How they gonna steal your name?" [Exhibit O-3].

d. Instagram user **stray_cat_life**, by direct message: "I've been following your friction with Gage. Everybody I talk to from Cali thought Gage was you lol." [Exhibit O-4].

e. Instagram user **realonelovepottery**: "I was confused when I saw @tricktrickgs and Berner promoting Gage Cannabis brand. I thought why name it Gage when there's Gage Green Group?" [Exhibit O-5].

f. Instagram user **voyage_bloom**, who sent Plaintiff's account a photograph of Defendants' product by direct message with the message: "I thought this was you guys...." (the message's remainder is truncated in the capture; the full-resolution original is compiled at O-6). [Exhibit O-6].

g. Instagram user **chase66j**: "Tbh I seen the gage opening from a friend and was hyped cause I thought it was you, then I seen Berner and his cookies lmaoooo." [Exhibit O-7].

h. Instagram user **carolkalvelage**, a Michigan consumer: "Things get confusing here in MI for me sometimes but now I'm glad I'm on the right road!!.. no more mistaking from here." — recounting that her husband had confused Defendants' own counter staff ("No wonder they had no clue what my husband was talking about"). [Exhibit O-8].

i. Instagram user **billysio313**, by direct message from Massachusetts: "So this is not you guys correct? Let me know please as it's at a cup near me in mass." [Exhibit O-9].

j. **Reverse confusion.** On or about January 20, 2021, Instagram user **geezwatt** commented on Defendant @gagecannabis's post advertising its Grand Rapids, Michigan operation: "Damn! I didn't know @gggnatural had a dispensary. Sign me up!" — attributing Defendants' dispensary to Plaintiff's @gggnatural mark. Rather than correct the misattribution, the @gagecannabis account replied so as to capitalize on it: "@geezwatt oh yeah, @gagecannabis is out here." [Exhibit O-10]. This exchange illustrates the reverse-confusion dynamic produced by Defendants' well-capitalized, approximately twenty-store Michigan build-out (Paragraph 43) — a consumer assuming Plaintiff's senior GAGE house of marks had itself entered the retail market, and Defendants exploiting rather than dispelling the error. Reverse confusion is a cognizable theory of liability in this

Circuit. *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960 (6th Cir. 1987).

k. **Authentication.** Each item comprising [Exhibit O] is authenticated by (i) the uncropped original screenshot as captured, preserving the complete post or message frame together with its embedded file metadata; (ii) the declaration of Michael Fong under Federal Rule of Evidence 901(b)(1), as a witness with personal knowledge of Plaintiff's @gagegreengroup and @gggnatural accounts and of the receipt and preservation of these communications; and (iii) corroborating captures from the Internet Archive Wayback Machine, together with platform records obtainable under Federal Rule of Civil Procedure 45. The confusion statements are offered not for their truth but as circumstantial evidence of the declarants' contemporaneous confusion as to source (Fed. R. Evid. 803(3)), and Defendants' @gagecannabis reply is a statement of a party opponent (Fed. R. Evid. 801(d)(2)). Each capture bears the platform's own date or relative timestamp as displayed at the time of capture; absolute posting dates for the relative-timestamped items will be confirmed from platform metadata and Wayback captures. This uncropped-original-plus-declaration foundation supplies the authentication that cropped excerpts in the prior TTAB proceeding were said to lack.

Taken together, the recovered record documents approximately twenty-four distinct third-party confusion events across Facebook, Instagram, and text message — of which ten representative instances are reproduced as Exhibits O-1 through O-10 — arising among Michigan consumers and spilling over to consumers in California and Massachusetts — corroborating that the confusion generated by Defendants' identical use of the GAGE mark on identical cannabis goods is actual, consumer-level, and widespread.

59C. **Actual confusion at the trade level and the enterprise's pre-adoption knowledge — the infringer's own retail team solicited Plaintiff by name.** The likelihood of confusion here is not a matter of inference alone; it manifested in the conduct of the enterprise's own personnel. On July 1, 2019 — more than two months before the September 16, 2019 insider transfer of the "Gage Cannabis" rights into Wolverine Partners Corp. (Paragraph 35), and more than four months before Plaintiff filed Opposition No. 91252169 on November 4, 2019 (Paragraph 38) — a member of the enterprise's "Gage Cannabis Co" retail team, Nicholas Wilkey, writing from the enterprise's own domain at nicholasw@gageusa.com (the same gageusa.com domain the enterprise used for legal@gageusa.com, Paragraphs 28 and 53), solicited Plaintiff's Gage Green Group by electronic mail sent to its

gageoriginals@gmail.com account, under the subject line "Products," stating verbatim: "Hello my name is Nicholas with Gage Cannabis Co We are interested in carrying your flower please get back to me with a detailed menu with what's currently available and prices so we can set something up thanks," and signing "Nicholas / Gage Cannabis Co / Retail Team." See [Exhibit MM] (July 1, 2019 email, Nicholas Wilkey <nicholasw@gageusa.com> to <gageoriginals@gmail.com>, subject "Products," retained natively in the receiving Gmail account, bearing native Message-ID <DM5PR22MB09877F0331F96823017BD175BCF90@DM5PR22MB0987.namprd22.prod.outlook.com>, authenticated by its gageusa.com sender domain, by that native Message-ID, and by the declaration of Michael Fong, who received the message at Gage Green Group's own account (Fed. R. Evid. 901(b)(1), (b)(4))). This communication is probative on two of the *Frisch's* factors enumerated in Paragraph 59A. First, as to actual confusion (factor four): the enterprise's own retail agent approached the senior user not as a distinct and competing brand but as an interchangeable "Gage" source of cannabis flower to be "carried" and "set[] . . . up" under the junior's retail operation — a paradigmatic instance of reverse confusion, in which the larger, better-financed junior user (then expanding toward the approximately twenty (20) Michigan

retail locations pleaded in Paragraphs 8 and 43) so saturates the trade that even its own personnel treat the senior user's goods as a supply line to be absorbed under the junior's banner; where a defendant's own employees do not distinguish the marks, confusion among ordinary consumers is a fortiori likely. Reverse confusion is a cognizable theory of liability in this Circuit. *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960 (6th Cir. 1987); *see* Paragraph 59B(j). Second, as to Defendants' intent (factor seven) and willfulness: the July 1, 2019 solicitation is direct documentary proof that the enterprise possessed actual, particularized knowledge of Plaintiff's Gage Green Group — its name, its cannabis goods, and its contact channel — before it acquired the "Gage Cannabis" rights (September 16, 2019) and before every act of adoption, expansion, United States registration, and monetization of the GAGE brand that followed. Defendants thus adopted, expanded, and monetized the GAGE brand not in good-faith ignorance but with pre-existing knowledge of the senior user they were displacing — a fact that supports a finding of knowing and willful infringement for purposes of 15 U.S.C. § 1117, and that independently reinforces the specific intent pleaded in Counts II and III (Paragraphs 45D, 68) and the bad-faith domain-registration conduct pleaded in Paragraphs 61–65.

60. Defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Plaintiff to injunctive relief, damages, an accounting of Defendants' profits, attorneys' fees, and costs under 15 U.S.C. § 1117.

## VII. DEFENDANTS' DOMAIN-REGISTRATION CONDUCT AS EVIDENCE OF BAD FAITH AND WILLFUL INTENT

61. Defendants' own discovery production establishes the scope of the enterprise's GAGE domain-name portfolio. A July 25, 2020 electronic-mail message from a GoDaddy representative to the enterprise's own account ("Info@Gage" <info@gageusa.com>), produced by Defendant Wolverine Partners Corp. in TTAB Opposition No. 91252169 as WOLV000118–WOLV000120, transmits what its author describes as "the list of domain name for Gage USA": fifty-eight (58) GAGE-formative domain names with registration timestamps. *See* [Exhibit E].

62. The portfolio's own timestamps trace the enterprise's occupation of Plaintiff's namespace: (a) gage.ca on August 31, 2016; (b) fifteen domains across September 22–23, 2017 — including twelve gagecannabis-formative names and gagehemp/gagehashish variants — approximately two months before the enterprise's first United States trademark filing; (c) eight gagelife-formative names on November 6, 2017; (d) seventeen gagegrowth-formative names on September 1, 2019, fifteen days before the September 16, 2019 Asset

Purchase Agreement (Paragraph 35; [Exhibit KK]); and (e) five domains registered in a single twenty-second burst on December 19, 2019, between 2:16:41 and 2:17:01 PM as recorded in the enterprise's own GoDaddy list: gagegreengroupsucks.com, gagegreens.com, gagegreensucks.com, gageorange.com, and gageworldwide.com. The Verisign registry's authoritative RDAP records independently confirm the burst (gageorange.com registered 2019-12-19T19:16:42Z; gagegreens.com registered 2019-12-19T19:17:01Z). *See* [Exhibits E, Y]; Paragraph 55.

63. The December 19, 2019 burst came forty-five (45) days after Plaintiff filed Opposition No. 91252169 against the enterprise (November 4, 2019; Paragraph 38). The enterprise's own produced record ([Exhibit E], WOLV000118–120) shows the burst's sequence: it BEGAN with the disparagement domains — gagegreensucks.com and gageworldwide.com at 2:16:41 PM, gageorange.com at 2:16:42 PM, gagegreengroupsucks.com at 2:16:44 PM, and gagegreens.com at 2:17:01 PM. In under half a minute the enterprise registered two domains incorporating Plaintiff's GAGE GREEN formative and two "sucks"-suffix domains constructed from Plaintiff's exact marks — disparagement vehicles with no function except to target Plaintiff (Paragraph 56). The same produced list shows a further post-Opposition cluster on January 18, 2020

(gagecalifornia.com, gageflorida.com, gagemassachusetts.com, gagemichigan.com, and gageusa.co).

64. This conduct — mass registration of GAGE-formative domains beginning before any trademark filing, a seventeen-domain cluster on the eve of the insider Asset Purchase Agreement, and a retaliatory twenty-second burst targeting Plaintiff's exact marks weeks after Plaintiff commenced proceedings against the enterprise — evidences Defendants' knowledge of Plaintiff's senior rights, their intent to occupy and dilute Plaintiff's namespace, and their willfulness for purposes of 15 U.S.C. § 1117(a) and the seventh *Frisch's* factor (Paragraph 59A), and further supports the specific-intent elements of the RICO counts.

65. Plaintiff pleads the domain-name conduct in this Section as evidence of bad faith, willfulness, and intent in support of Count I and the RICO counts; no separate claim under 15 U.S.C. § 1125(d) is pleaded in this action.

## VIII. COUNT II — CIVIL RICO UNDER 18 U.S.C. § 1962(C)

66. Plaintiff incorporates by reference Paragraphs 1 through 65 above, and each and every factual allegation set forth in Sections III through V (Paragraphs 10–56) is realleged as if fully set forth herein.

## A. THE ENTERPRISE

67. Defendants and Does 1–10 formed an association-in-fact enterprise (the "GAGE Misappropriation Enterprise") engaged in and the activities of which affected interstate and foreign commerce. The enterprise possessed the three structural features required by *Boyle v. United States*, 556 U.S. 938, 946 (2009): (a) a common purpose — the misappropriation, monetization, and concealment of the GAGE Marks; (b) relationships among those associated with the enterprise — the Reda-family sellers, the Wolverine/Hermiz buyers, the Gage Growth and TerrAscend acquirers, and the Cookies retail partner, linked through the related-party transfers pleaded in Paragraphs 33–45; and (c) longevity sufficient to permit the associates to pursue the enterprise's purpose, spanning no later than November 22, 2017 through the present. The enterprise is an entity distinct from the pattern of racketeering activity in which it engaged. The association-in-fact enterprise is likewise distinct from each Defendant named as a RICO "person" in Count II (Paragraph 67A), because the enterprise comprises additional members — including the Reda-family seller entities, the Cookies retail partner, and Does 1–10 — beyond any single corporate Defendant; the alter-ego allegations of Paragraph 11 are pleaded for veil-piercing and collection, not to equate any RICO "person" with the enterprise.

67A. **Operation or management.** Each Defendant named in this Count participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 183, 185 (1993). In this Circuit a defendant so participates "either by making decisions on behalf of the enterprise or by knowingly carrying them out." *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 490 (6th Cir. 2013); *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 792 (6th Cir. 2012). Both the upper-rung participants who directed the enterprise's affairs and the lower-rung participants who knowingly executed those directions are liable, as are outsiders who took part in operating or managing the enterprise even without holding a formal position. *Reves*, 507 U.S. at 184–85. This Count is asserted only against the Defendants whose operation-or-management acts are pleaded: **TerrAscend Corp., Gage Growth Corp., AEY Holdings LLC, and AEY Capital LLC**, the operating entities that made and executed the enterprise's misappropriation, licensing, assumed-name-renewal, and proceeds-diversion decisions — AEY Capital LLC being the Michigan cannabis-licensed entity through which the enterprise operated the approximately twenty (20) GAGE-branded Michigan retail locations and which executed the Michigan Cannabis Regulatory Agency instruments governing that operation (Paragraphs 16, 43), thereby conducting the enterprise's core retail

affairs; and **Defendants Fabian Monaco, Bruce Linton, David Watza, Michael Hermiz, Michael Finos, and Lynn Gefen**, the officers and agents who made or knowingly carried out those decisions (Paragraphs 68(a)–(b), 29A, 43). The remaining Defendants are named not in this Count but in the § 1962(d) conspiracy pleaded in Count III.

## B. PATTERN OF RACKETEERING ACTIVITY

68. The Defendants named in this Count (Paragraph 67A) conducted or participated in the conduct of the GAGE Misappropriation Enterprise through a pattern of racketeering activity comprising the predicate acts set forth below. Plaintiff does not predicate this claim on Defendants' securities-disclosure omissions in their SEC filings: although those omissions are pleaded in Paragraphs 37–38, 42, 47, and 49 as evidence of the enterprise's concealment and its knowledge of the misappropriation, Plaintiff recognizes that 18 U.S.C. § 1964(c) bars reliance on conduct actionable as fraud in the purchase or sale of securities, and Plaintiff accordingly grounds the pattern on the non-securities mail-fraud, wire-fraud, and money-laundering predicates enumerated here:

a. **Mail Fraud and Wire Fraud (October 12, 2020).** Defendants Monaco, Linton, Watza, and Hermiz, together with other officers and directors of Gage Growth Corp., executed and transmitted the October 12, 2020 License

Agreement concerning the misappropriated "Gage" mark via U.S. Mail or commercial interstate carrier, and by interstate wire, from Ontario, Canada to Michigan, in furtherance of the scheme to misappropriate and monetize the GAGE Marks and their goodwill. *See* 18 U.S.C. §§ 1341, 1343; [Exhibit Z] (License Agreement, produced by Dentons LLP in TTAB Opposition No. 91252169 discovery). The scheme and the deceptive intent are pleaded with particularity in Paragraphs 36A, 40, and 45D–45F: the acquisition instrument's own knowledge carve-out and covenant to defend the anticipated opposition ([Exhibit KK], §§ 3.2(d), 6.2(f)); the License Agreement's first-right-to-sue and brand-ownership clauses (Paragraph 40); and the enterprise's continued deployment of the GAGE Marks after dated written knowledge of Plaintiff's senior claim (Paragraphs 45D–45F; [Exhibit LL]).

b. **Wire Fraud and Mail Fraud (January 15, 2026).** AEY Holdings LLC (Lynn Gefen, Manager) transmitted via the Michigan LARA electronic filing system the renewal of the "Gage Cannabis Company" assumed-name registration through December 31, 2031, in furtherance of the continued misappropriation and concealment of the GAGE Marks, while TerrAscend Corp.'s contemporaneous public reporting characterized the Michigan brand operations as discontinued. The renewal was a half-truth directed at the State of

Michigan and the consuming public: it secured the "Gage Cannabis Company" name through December 31, 2031 while the enterprise's contemporaneous public reporting characterized the Michigan operations as discontinued (Paragraphs 44–45C), concealing the enterprise's continued occupation of Plaintiff's mark-space. *See* 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud); [Exhibit W-1].

c. **Money Laundering (March 10, 2022 and continuing) (derivative of subparagraphs (a)–(b)).** Defendants TerrAscend Corp. and Gage Growth Corp., through their officers and directors, engaged in financial transactions involving property derived from the specified unlawful activity pleaded in subparagraphs (a)–(b) — the proceeds of the mail and wire fraud, to the extent attributable to the misappropriated GAGE goodwill and in an amount to be proven — with intent to promote the continued misappropriation scheme through 2025 and to conceal or disguise the source, ownership, or control of those proceeds. *See* 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1957(a). Mail and wire fraud (18 U.S.C. §§ 1341, 1343) are specified unlawful activity under 18 U.S.C. § 1956(c)(7) whose proceeds qualify under the money-laundering statutes. This predicate is derivative of subparagraphs (a)–(b) and rises or falls with them.

## C. CONTINUITY PLUS RELATIONSHIP

69. The predicate acts enumerated in Paragraph 68(a)–(c) (a) span the period from October 12, 2020 through the January 15, 2026 assumed-name renewal, with continuing counterfeit use of the GAGE mark at approximately twenty (20) Michigan retail locations through TerrAscend's June 27, 2025 Michigan exit; (b) share the common participants identified in Paragraph 6; (c) share the common purposes of misappropriating, monetizing, and concealing the GAGE Marks; (d) target the same victim — Plaintiff and Plaintiff's GAGE Marks — and a constellation of secondary victims (the Michigan Cannabis Regulatory Agency and Michigan consumers misled into purchasing counterfeit "GAGE" cannabis goods); and (e) deploy the same methods, namely interstate wire and mail transmission of false or materially-omitting communications, use of nominee corporate entities (Wolverine Partners Corp. → Gage Growth Corp.; AEY Capital LLC → AEY Holdings LLC), and the deployment of related-party non-arms-length transfers as concealment vehicles. The pattern satisfies the **continuity-plus-relationship test** of *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239–243 (1989) (open-ended continuity established where the predicate acts include a specific threat of repetition or are part of an ongoing entities' regular way of doing business; closed-ended continuity established where related predicates extend over a substantial period of time). Both forms

of continuity are satisfied: closed-ended continuity is established by the multi-year time-span of overt predicate acts (October 2020 through January 2026), together with the continuing counterfeit use through 2025; open-ended continuity is established by AEY Holdings LLC's January 15, 2026 assumed-name renewal extending the misappropriated "Gage Cannabis Company" name through December 31, 2031, demonstrating an ongoing intention to continue the predicate activity. The Sixth Circuit has sustained civil RICO liability on materially analogous facts — a multi-entity association-in-fact that monetized a fraudulent scheme through a sustained pattern of mail and wire fraud. *West Hills Farms, LLC v. ClassicStar Farms, Inc.*, 727 F.3d 473 (6th Cir. 2013).

69A. **Standing under Sedima.** Plaintiff has suffered injury to Plaintiff's business or property by reason of the violation of 18 U.S.C. § 1962, satisfying the standing requirements of *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–500 (1985) (the civil RICO plaintiff must show (a) a violation of § 1962, (b) injury to business or property, and (c) causation of the injury by the violation). All three elements are pleaded with particularity in Paragraphs 70 and 71 below.

69B. **Proximate cause under Anza and Hemi Group.** Plaintiff's injury is directly caused by the enumerated predicate acts, not derivatively through a

third-party intermediary. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–461 (2006) (RICO requires a direct relationship between the injurious conduct and the resulting injury, not a derivative injury through an intermediate victim); *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9–18 (2010) (proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged"). Plaintiff is the senior user of the GAGE Marks; the mail- and wire-fraud and money-laundering predicates enumerated in Paragraph 68 — the misappropriation, monetization, and concealment of the GAGE Marks through the related-party transfers and interstate communications pleaded there — directly diverted from Plaintiff the goodwill, consumer recognition, and brand-equity value of the GAGE Marks, culminating in the March 10, 2022 TerrAscend acquisition consideration — valued at approximately $386,000,000 at closing (Paragraph 41) — that flowed to Defendants and away from Plaintiff. Unlike the derivative injuries held too remote in *Anza* and *Hemi Group*, Plaintiff's injury passes through no intermediate victim: the interests the enterprise invaded — Plaintiff's commercial identity, reputation, customer relationships, and the sales and licensing opportunities accrued through Plaintiff's own continuous use — are interests personal to Plaintiff, and their diversion ran in a single step from

Plaintiff to the enterprise. No third party's independent loss stands between the predicate conduct and the harm for which Plaintiff sues.

69C. **First-party reliance not required under Bridge.** Plaintiff need not allege personal reliance on Defendants' fraudulent representations. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648–658 (2008) (a private RICO plaintiff alleging mail-fraud predicates need not show first-party reliance — the only reliance required is the reliance of the immediate victim of the fraud, which here includes the Michigan consumers deceived into purchasing counterfeit "GAGE" cannabis goods and the Michigan licensing authorities to whom the assumed-name and license-agreement communications enumerated in Paragraph 68(a)–(b) were directed); *accord Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393 (6th Cir. 2012) (applying *Bridge*; reversing dismissal of a mail/wire-fraud-predicated civil RICO claim where first-party reliance was absent).

69D. **Domestic injury under RJR Nabisco.** Plaintiff alleges a domestic injury to business or property within the meaning of *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016). Although certain Defendants are Canadian, Plaintiff's injured property interests are domestic: United States common-law and applied-for federal trademark rights in the GAGE Marks, the goodwill of

those marks in the United States market, and the diversion of that goodwill through the operation of approximately twenty (20) Michigan retail locations. The misappropriated proceeds were realized through, and the predicate acts were directed into and consummated within, the United States.

## D. INJURY TO PLAINTIFF IN PLAINTIFF'S BUSINESS OR PROPERTY

69E. **Direct personal injury.** The enterprise's conduct reached Plaintiff personally and directly: its own retail team solicited Plaintiff by name through Plaintiff's own account (Paragraph 59C; [Exhibit MM]); its public-market parent's Chief Legal Officer wrote to Plaintiff personally, twice, acknowledging Plaintiff's competing use and then opposing Plaintiff's application (Paragraphs 45E–45F; [Exhibit LL]); confused consumers wrote into Plaintiff's own accounts to resolve the confusion the enterprise created (Paragraph 59B; [Exhibits O-1 through O-10]); and the enterprise's Michigan counsel accepted Plaintiff's own confidences before appearing adverse to him (Paragraphs 52A–54; [Exhibit AA]).

69F. **Separate and distinct injury.** Plaintiff's injuries are separate and distinct from any injury to the record title held by Gage Prestige Holdings LLC. They arise from wrongs done directly to Plaintiff — the enterprise's solicitation of Plaintiff by name, the personal correspondence its Chief Legal Officer directed

to him, and the consumer confusion routed to Plaintiff's own accounts (Paragraph 69E) — and from goodwill attributable to Plaintiff as the senior principal of the continuous use that generated it (Paragraph 10), predating and separate from the record title later consolidated in Gage Prestige Holdings LLC. That satisfies the direct-injury exception of *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542, 544–45 (6th Cir. 1985), and the direct-relationship requirement of *Anza* and *Hemi Group* pleaded in Paragraph 69B. Plaintiff sues only for his own injury; any diminution in the record title belongs to Gage Prestige Holdings LLC and is not asserted here.

69G. **The securities transaction was incidental, not integral.** Any securities transaction was incidental and not integral to the fraud pleaded in this Count. The scheme was complete and actionable without any purchase or sale of a security: the misappropriation and diversion of Plaintiff's goodwill was consummated through the October 12, 2020 license agreement, the counterfeit retail use, and the assumed-name concealment, none of which depends upon a theory of securities fraud. The share transaction was itself lawful and served only as the enterprise's method of realizing the proceeds of the collateral fraud. *See Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783 (6th Cir. 2012).

70. Plaintiff suffered injury to Plaintiff's business or property, by reason of Defendants' conduct of the enterprise through the pattern of racketeering activity, including without limitation: (a) the diversion of Plaintiff's personal business — lost sales of GAGE-branded genetics and merchandise, lost licensing and royalty opportunities, and the destruction of the personal brand equity Plaintiff built from 2008 forward — culminating in the enterprise's monetization of the misappropriated goodwill in the TerrAscend acquisition (Paragraph 41); (b) the diversion of consumer recognition and association in the Michigan retail market during the 2019–2025 operation of approximately twenty (20) TerrAscend Michigan locations under the GAGE brand; and (c) the corresponding diminution in Plaintiff's own commercial interest in reputation and sales and in the personally-generated goodwill arising from Plaintiff's own continuous use of the GAGE Marks — injury separate and distinct from any diminution in the marks' record title or registration held by Gage Prestige Holdings LLC (Paragraph 69F).

71. The Defendants named in this Count (Paragraph 67A) are jointly and severally liable to Plaintiff under **18 U.S.C. § 1964(c)**, which provides that a person injured in his business or property by reason of a violation of § 1962 "shall recover threefold the damages he sustains and the cost of the suit,

including a reasonable attorney's fee." Plaintiff need not plead or prove a "racketeering injury" distinct from the harm caused by the predicate acts. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) (holding that § 1964(c) imposes no distinct "racketeering injury" requirement beyond injury caused by the predicate acts). Plaintiff's recoverable damages are the portion of the misappropriated goodwill and its traceable proceeds attributable to Defendants' pattern of racketeering activity, trebled under § 1964(c), in an amount to be proven at trial. Plaintiff does not contend that the entire acquisition consideration (announced at approximately $545,000,000 and valued at approximately $386,000,000 at closing — Paragraph 41) — which purchased an operating enterprise of dispensaries, licenses, real estate, and inventory in addition to the misappropriated brand — is itself the measure of damages; the recoverable sum is the goodwill-attributable portion to be established by proof. The acquisition consideration is pleaded solely as a measure and a means of tracing the proceeds of the misappropriation into Defendants' hands, and not as the object of, or as damages arising from, any purchase or sale of a security.

## IX. COUNT III — RICO CONSPIRACY UNDER 18 U.S.C. § 1962(D)

72. Plaintiff incorporates by reference Paragraphs 1 through 71 above.

73. Defendants knowingly agreed with each other to conduct or participate in the conduct of the GAGE Misappropriation Enterprise through the pattern of racketeering activity described above, and each Defendant acted in furtherance of that agreement through one or more of the overt acts identified herein. The conspiracy alleged in this Count reaches every Defendant regardless of whether that Defendant operated or managed the enterprise; under *Salinas v. United States*, 522 U.S. 52, 63–66 (1997), a Defendant who knowingly agreed to further the enterprise's affairs is liable under 18 U.S.C. § 1962(d) even if that Defendant did not itself conduct or manage the enterprise or commit a predicate act. The conspiracy pleaded here is among legally distinct and independently-owned actors — not only the commonly-controlled TerrAscend and Gage corporate family, but also the separately-owned Cookies Defendants, the Canopy Defendants, the Reda-family seller entities, and the independent outside-counsel Defendants — so the agreement alleged is among plural, separately-owned economic actors and is not the coordination of a single economic actor with itself or with its own wholly-owned components. The alter-ego allegations of Paragraph 11 are pleaded for veil-piercing and collection against the commonly-controlled corporate family only, and do not narrow the conspiracy, which reaches independently-owned participants outside

that family. This Count is asserted against all Defendants — including both the Defendants named in Count II (Paragraph 67A) and the remaining Defendants, among them Radicle Medical Marijuana Inc., Radicle Cannabis Holdings Inc., Spartan Partners Corporation, Spartan Partners Holdings LLC, Cannabis Legal Group, Barton W. Morris, Jr., Jennifer Lynn Domingue, the Cookies Defendants, Gilbert Milam, Jr., Jason Wild, Rami Reda, Youssef Reda, Ziad Reda, Ziad Ghanem, Canopy Growth Corporation, RIV Capital Inc., and Canopy USA, LLC — whose liability under this Count rests on their knowing agreement to further the enterprise rather than on operation or management.

73A. **The Foreign Canopy Defendants' agreement.** On information and belief, anchored to the structural facts pleaded in Paragraphs 33A-33E — RIV Capital Inc.'s 23.81% equity in the brand-source Defendant Radicle Medical Marijuana Inc.; Canopy Growth Corporation's 100% control of that venture arm; the Foreign Canopy Defendants' counterparty roles in the Arrangement Agreement that positioned the United States-market acquirer; the Linton bridge, including Defendant Linton's personal investments across Plaintiff's cannabis-genetics competitors (Paragraph 33B); and the Mavrinac interlocking directorate spanning the Canopy venture arm, the seller, and the buyer (Paragraph 33E) — Defendants Canopy Growth Corporation and RIV Capital

Inc. knowingly agreed to participate in the conduct of the GAGE Misappropriation Enterprise's affairs through the pattern of racketeering activity pleaded in Count II. A defendant may be liable under 18 U.S.C. § 1962(d) without itself committing or agreeing to commit any predicate act and without participating in the operation or management of the enterprise. *Salinas v. United States*, 522 U.S. 52 (1997). Plaintiff does not allege the Foreign Canopy Defendants' knowledge as an established fact; Plaintiff pleads their knowledge and agreement on information and belief, tied to the concrete structural facts of record above, which taken together plausibly support the inference of that knowledge and agreement.

74. Defendants are jointly and severally liable to Plaintiff under 18 U.S.C. §§ 1962(d) and 1964(c) for treble damages, costs, and reasonable attorneys' fees.

## X. COUNT IV — VOID TITLE AND FRAUDULENT TRANSFER (MICHIGAN UNIFORM VOIDABLE TRANSACTIONS ACT, MCL 566.31 ET SEQ.) AND CONSTRUCTIVE TRUST

75. Plaintiff incorporates by reference Paragraphs 1 through 65 above.

75A. **Void title (lead theory — nemo dat quod non habet).** Radicle Cannabis Holdings Inc. could convey no greater right in the "Gage" name than it held. Because the goodwill and senior use of the GAGE Marks are attributable to Plaintiff (Paragraphs 10, 31–32), Radicle held no valid, unencumbered title in

the GAGE Marks to transfer on September 16, 2019, and each successive transferee in the chain (Wolverine Partners Corp. → Gage Growth Corp. → the acquisition consideration) took subject to Plaintiff's superior pre-existing interest. A purchaser cannot acquire clean title to that which the seller did not own; Plaintiff's equitable interest in the misappropriated marks and their traceable proceeds is therefore superior to the interests of the transferees, and this action seeks to enforce that pre-existing interest. The September 16, 2019 transfer instrument and its below-market consideration are documented in [Exhibits L-M] (Wolverine Partners Corp. SEC Form 1-A, CIK 0001810254). The Michigan Uniform Voidable Transactions Act theory below is pleaded in the alternative.

76. **In the alternative — voidable transfers.**

76A. **The 2025–2026 dissipation transfers (timely).** The transfers pleaded in Paragraphs 16A and 45A — effected through the May 1, 2026 forbearance agreement with the FG Loan lender syndicate (in which Defendant Wild, TerrAscend's Executive Chairman and controlling shareholder, is himself an invested lender, Paragraph 19), the ensuing May 2026 receivership application, and the liquidation of the Michigan GAGE-branded operating assets — were made or suffered with actual intent to hinder, delay, or defraud creditors of the

transferor entities, including Plaintiff, and are voidable under **MCL 566.34(1)(a)**, which reaches creditors whose claims arose before or after the transfer. The badges of fraud enumerated in **MCL 566.34(2)** present here include: transfer to or for the benefit of insiders (MCL 566.34(2)(a)) — the enterprise's controlling equity holder simultaneously stood on the creditor side of the secured facility; before the transfers the debtors had been sued or threatened with suit (MCL 566.34(2)(d)), including the TTAB proceedings concerning the GAGE Marks and Plaintiff's asserted claims; the transfers comprised substantially all of the Michigan debtors' assets (MCL 566.34(2)(e)); and the debtors were insolvent or became insolvent shortly after the transfers were made (MCL 566.34(2)(i)).

76B. **Insolvency; constructive-fraud alternative.** At the time of the 2025–2026 transfers the Michigan Receivership Entities were insolvent: as pleaded in Paragraph 45A on the basis of TerrAscend's own public disclosures, the estate's liabilities exceeded its assets, the estate was dominated by the senior secured lien, and liquidation leaves nothing for unsecured claimants. Those transfers were made without the debtors' receiving reasonably equivalent value in exchange, and are voidable in the alternative under **MCL 566.34(1)(b)** and **MCL 566.35(1)** (transfer without reasonably equivalent value by a debtor insolvent at the time or rendered insolvent thereby, as to a creditor whose claim

arose before the transfer — Plaintiff's claim arose no later than 2019 and long before the 2025–2026 transfers).

76C. **The September 16, 2019 insider transfer — pleaded as predicate and for tracing, not for MUVTA avoidance.** The September 16, 2019 transfer of the "Gage Cannabis" rights from Defendant Radicle Cannabis Holdings Inc. to Defendant Wolverine Partners Corp. for CAD $250,000 — a non-arms-length insider transaction (Paragraph 36) at a price facially below the value the enterprise itself later ascribed to the brand — is pleaded as the origin of the chain through which Plaintiff traces the misappropriated goodwill (Paragraph 75A) and as evidence of the enterprise's method and intent. Plaintiff does not seek avoidance of the 2019 transfer under the Michigan Uniform Voidable Transactions Act. The void-title and constructive-trust theories of Paragraph 75A, which arise from Plaintiff's pre-existing superior interest and not from the Act, and the timely avoidance claims of Paragraphs 76A–76B, do not depend on avoidance of the 2019 transfer; Plaintiff reserves all positions under MCL 566.39, MCL 600.5813, and MCL 600.5855 should any party place the avoidability of the 2019 transfer in issue. *See* [Exhibits L-M] (Wolverine Partners Corp. SEC Form 1-A documenting the CAD $250,000 consideration).

77. Plaintiff seeks the creditor's remedies available under **MCL 566.37** as to the 2025–2026 transfers pleaded in Paragraphs 76A–76B: avoidance of those transfers to the extent necessary to satisfy Plaintiff's claim (MCL 566.37(1)(a)); attachment or other provisional remedy against the assets transferred or their traceable proceeds (MCL 566.37(1)(b)); and an injunction against further disposition by Defendants of the transferred assets or their proceeds (MCL 566.37(1)(c)(i)). Plaintiff further seeks imposition of a **constructive trust** over the traceable proceeds of the misappropriated GAGE Marks — traceable through the chain pleaded above: the September 16, 2019 transfer (Paragraph 35) into Wolverine Partners Corp., renamed Gage Growth Corp., and realized in part in the TerrAscend acquisition consideration on March 10, 2022, valued at approximately $386,000,000 at closing (Paragraph 41) — **limited to the portion of those proceeds attributable to the misappropriated GAGE goodwill, in an amount to be proven**, and not the entire acquisition consideration (which purchased an operating enterprise beyond the mark). A constructive trust is appropriate under Michigan law to prevent unjust enrichment where property is obtained through fraud, misrepresentation, or concealment. *Blachy v. Butcher*, 221 F.3d 896 (6th Cir. 2000). Plaintiff asserts a **pre-existing equitable and beneficial interest in those specific, identifiable,**

**traceable proceeds**, and does **not** seek to restrain Defendants' general assets to secure a money judgment; the relief sought is therefore the constructive-trust and fraudulent-conveyance relief expressly preserved by *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 & n.7 (1999), and is not the bare asset freeze that decision forbids. Plaintiff acknowledges that under **MCL 566.38** a person who took in good faith and for reasonably equivalent value, including a good-faith secured lender, takes free of avoidance to the extent of the value given; Plaintiff's avoidance and constructive-trust remedies are directed to the transferees who received the misappropriated goodwill and its traceable proceeds, and not to any perfected security interest of a good-faith lender in the receivership collateral. Plaintiff does not seek priority over any federal tax lien.

77A. **The Canopy Defendants as constructive-trust beneficiaries.** The constructive trust over the traceable proceeds of the misappropriated GAGE Marks (Paragraph 77) extends to Defendants Canopy Growth Corporation, RIV Capital Inc., and Canopy USA, LLC, each of which holds an identifiable interest into which the misappropriated GAGE goodwill was converted: RIV Capital Inc. (f/k/a Canopy Rivers Inc.) through its 23.81% equity interest in the brand-source Defendant Radicle Medical Marijuana Inc. and its resulting share

of the consideration Radicle received on the September 16, 2019 sale of the brand (Paragraphs 33A, 35; [Exhibits CC, L-M]); Canopy Growth Corporation through that same controlled interest and through its direct holding of 19,445,285 TerrAscend Exchangeable Shares (Paragraph 33C; [Exhibit EE]); and Canopy USA, LLC through its holding of 24,601,467 TerrAscend Exchangeable Shares acquired December 9, 2022 (Paragraph 33D; [Exhibit I]). Under Michigan law a constructive trust may be imposed upon identifiable property, or its traceable proceeds, held by a party — including a party innocent of wrongdoing — where retention would unjustly enrich that party at the expense of the person to whom the property in equity and good conscience belongs. *Kammer Asphalt Paving Co. v. East China Township Schools*, 443 Mich. 176 (1993); *Kent v. Klein*, 352 Mich. 652 (1958); *Blachy v. Butcher*, 221 F.3d 896 (6th Cir. 2000). The relief sought against each Canopy Defendant is limited to the portion of its interest attributable to the misappropriated GAGE goodwill, in an amount to be proven, and does not reach any interest supported by value the Canopy Defendant gave. Plaintiff does not seek avoidance under the Michigan Uniform Voidable Transactions Act as against the Canopy Defendants.

## XI. THE DOMINGUE–MORRIS CONFLICT RECORD AS EVIDENCE OF ENTERPRISE KNOWLEDGE AND INEQUITABLE CONDUCT

78. The facts pleaded in this Section are offered as evidence in support of Count I (willfulness and the unclean-hands rebuttal pleaded in Paragraph 58B) and of the knowledge, coordination, and concealment elements of the RICO counts; no separate count for breach of fiduciary duty is pleaded in this action.

79. Defendants Domingue, Morris, and Cannabis Legal Group owed Plaintiff fiduciary duties of loyalty and confidentiality arising from the attorney-client relationship established when Plaintiff paid Cannabis Legal Group for legal consultation conducted by Domingue concerning the GAGE Marks dispute.

80. Defendants breached the common-law fiduciary duties of loyalty and confidentiality owed to a former client by Defendant Domingue's subsequent representation of adverse parties (Defendant Gage Growth Corp., including under its former name Wolverine Partners Corp.) in the same GAGE Marks dispute, without disclosure to Plaintiff or Plaintiff's written informed consent. Michigan Rules of Professional Conduct 1.9 and 8.4(c) are pleaded not as an independent cause of action — Michigan does not recognize a private right of action for a disciplinary-rule violation — but as evidence of the standard of care and the scope of the fiduciary duties that the common-law attorney-client relationship imposes.

81. The disclosure and use of Plaintiff's confidences to Plaintiff's detriment (Paragraphs 52A–54; [Exhibit AA]) is pleaded as evidence of the enterprise's knowledge, coordination, and inequitable conduct, and in further support of the unclean-hands rebuttal pleaded in Paragraph 58B and the willfulness pleaded in Count I.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

**A.** A permanent injunction restraining each Defendant, and all persons acting in concert with any Defendant, from using the GAGE Marks or any confusingly-similar designation in commerce in connection with cannabis goods and services;

**B.** An order enjoining Defendants' registration, use, or trafficking in the domain names identified in Paragraphs 55–56 and 61–65, and directing their cancellation or such other disposition as the Court considers just and equitable;

**C.** An accounting and disgorgement of Defendants' profits under 15 U.S.C. § 1117(a) attributable to the infringing use of the GAGE Marks, in an amount to be proven at trial; Plaintiff does not seek the entire acquisition consideration

(Paragraph 41) as § 1117 profits, that consideration having purchased an operating enterprise beyond the misappropriated mark;

**D.** Damages under the Lanham Act including disgorgement, lost profits, and corrective-advertising relief;

**E.** Treble damages under 18 U.S.C. § 1964(c);

**F.** Avoidance under MCL 566.31 *et seq.* (MCL 566.34, 566.35, 566.37) of the 2025–2026 dissipation transfers pleaded in Paragraphs 16A, 45A, and 76A–76B, to the extent necessary to satisfy Plaintiff's claim, and imposition of a constructive trust over the specific, identifiable, traceable proceeds of the misappropriated GAGE Marks — traced from the September 16, 2019 transfer into Wolverine Partners Corp. / Gage Growth Corp. and realized in part in the March 10, 2022 TerrAscend acquisition consideration — in which Plaintiff asserts a pre-existing equitable and beneficial interest, together with attachment of and an injunction against further disposition of those traceable proceeds under MCL 566.37(1)(b)–(c);

**G.** Compensatory damages in an amount to be determined at trial;

**H.** Pre-judgment and post-judgment interest at the maximum lawful rate;

**I.** Reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a), 18 U.S.C. § 1964(c), and applicable Michigan law; and

**J.** Such other and further relief as this Court considers just and equitable.

## XIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
/s/ Michael Fong
Michael Fong
In Propria Persona (Self-Represented Plaintiff)
4225 Miller Road, Suite 9, #131
Flint, Michigan 48507
(810) 444-0118
michael@gagegreengroup.com
Dated: August 13, 2026

## VERIFICATION

I, Michael Fong, declare under the penalties of perjury under 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and that the factual allegations stated herein are true and correct based upon my personal knowledge of the matters described, and as to those matters stated upon information and belief, I am informed of the specific primary-source-anchored evidence supporting each such allegation and I believe each such allegation to be true.

Dated this 13th day of August, 2026.
/s/ Michael Fong
Michael Fong
In Propria Persona (Self-Represented Plaintiff)
4225 Miller Road, Suite 9, #131
Flint, Michigan 48507
(810) 444-0118
michael@gagegreengroup.com

## CERTIFICATE OF SERVICE

I, Michael Fong, appearing in propria persona, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing **Verified Complaint** (together with Plaintiff's Exhibits as identified in the accompanying Exhibit Index, Bates-numbered GVF 000001 through GVF 002071) to be served upon each Defendant identified below by the methods indicated:

| Defendant | Service Method | Address |
|---|---|---|
| TerrAscend Corp. (Ontario, Canada) | Hague Convention Art. 5(a) Ontario Central Authority / Art. 10(b) process server; FRCP 4(d) waiver in parallel | 77 City Centre Drive, Suite 501 – East Tower, Mississauga, ON L5B 1M5, Canada |
| Gage Growth Corp. (n/k/a TerrAscend Growth Corp.; f/k/a Wolverine Partners Corp.) (Ontario) | Hague Art. 5(a)/10(b) | Current Ontario (OBCA) registered office — to be confirmed from the Ontario Business Registry before service (prior Toronto/Ottawa addresses of record are stale) |
| Radicle Cannabis Holdings Inc. (n/k/a Noya Holdings Inc.) (Ontario) | Hague Art. 5(a)/10(b) | Current Ontario registered office — to be confirmed from the Ontario Business Registry before service |
| Radicle Medical Marijuana Inc. (n/k/a Noya Cannabis Inc.) (Ontario) | Hague Art. 5(a)/10(b) | Current Ontario registered office — to be confirmed from the Ontario Business Registry before service |
| AEY Holdings LLC (Michigan) | FRCP 4(h)(1)(B) — resident agent of record | Capitol Corporate Services, Inc., 186 N Main St, 2nd Fl, Ste 1, Plymouth, MI 48170 (per MI LARA annual statement, Entity 802128796) — and, to the extent required, the receiver in Oakland County No. 2026-222791-CB |
| AEY Capital LLC (Michigan) | FRCP 4(h)(1)(B) — resident agent of record | Capitol Corporate Services, Inc., 186 N Main St, 2nd Fl, Ste 1, Plymouth, MI 48170 (per MI LARA annual statement, Entity 802133602) — and, to the extent required, the receiver in Oakland County No. 2026-222791-CB |
| Spartan Partners Corporation (Michigan) | FRCP 4(h)(1)(B) — resident agent of record | Capitol Corporate Services, Inc., 186 N Main St, 2nd Fl, Ste 1, Plymouth, MI 48170 (MI LARA entity number to be confirmed before service) |
| Spartan Partners Holdings LLC (Michigan) | FRCP 4(h)(1)(B) — resident agent of record | Capitol Corporate Services, Inc., 186 N Main St, 2nd Fl, Ste 1, Plymouth, MI 48170 (MI LARA entity number to be confirmed before service) |
| Cookies Creative Consulting & Promotions, Inc. (California No. C4637839; successor by conversion to Cookies Creative Consulting & Promotions LLC) | FRCP 4(h)(1)(B) — serve CA agent for service | eResidentAgent, Inc. (agent of record for the Inc.); do not serve the defunct LLC |
| Cookies SF LLC (California) | FRCP 4(h) corporate service | Per CA SOS records |
| Canopy Growth Corporation (Canada, CBCA) | Hague Art. 5(a)/10(b); FRCP 4(d) waiver in parallel | Registered office 1 Hershey Drive, Smiths Falls, ON K7A 0A8 — confirm via Corporations Canada before service |
| RIV Capital Inc. (f/k/a Canopy Rivers Inc.) (Ontario) | Hague Art. 5(a)/10(b) | Registered office 365 Bay Street, Suite 800, Toronto, ON M5H 2V1 — confirm the current registered office/agent within the Fluent (Cansortium) group following the December 19, 2024 acquisition (Paragraph 18B) before service |

| | | |
|---|---|---|
| Canopy USA, LLC (United States) | FRCP 4(h)(1)(B) — registered agent of record | State of organization and registered agent to be confirmed from the applicable U.S. corporate registry before service (Paragraph 18C) |
| Barton W. Morris, Jr. (Michigan attorney P54701) | FRCP 4(e) / MCR 2.105(A) personal service | 520 N Main St, Ste A, Royal Oak, MI 48067 |
| Cannabis Legal Group (Michigan law-firm entity) | FRCP 4(h)(1)(B) — resident agent of record | Barton W. Morris, Jr., 520 N Main St, Ste A, Royal Oak, MI 48067 — exact registrable entity form to be confirmed from MI LARA before service |
| Jason Wild (TerrAscend Executive Chairman) | FRCP 4(e)(2) personal delivery | 1051 N Venetian Drive, Miami Beach, FL 33139 (defendant personally signed for Plaintiff's certified pre-suit demand at this address) |
| Bruce Linton (former Canopy CEO; Executive Chairman Gage Growth) | Hague Art. 10(b) process server (Ontario) | Ottawa, ON residence — to be confirmed before service |
| Lynn Gefen (TerrAscend CLO/CPO) | FRCP 4(e) personal service | 6 Hermit Ct, Westport, CT 06880-1112 (per attorney-registration address of record) |
| Michael Hermiz (Wolverine/Gage co-founder & director) | FRCP 4(e) / MCR 2.105(A) personal service | 3663 Piccadilly Drive, Rochester Hills, MI 48309 (prior 47331 Caylee Dr sold 2023-01-27 — do not serve there) |
| Fabian Monaco (Gage Growth President) | Hague Art. 10(b) process server (Ontario) — NOT CT Corporation (rejected "Not Agent," 2026-05-14) | Toronto, ON registered office — to be confirmed before service |
| David Watza (Gage Growth CFO) | FRCP 4(e) personal service | Michigan dwelling — to be confirmed before service (SEC address 47827 Halyard Dr, Plymouth is a defunct former employer — do not serve there) |
| Michael Finos (Gage Growth President (USA), EVP, Director) | FRCP 4(e) personal service | Michigan dwelling (Utica, Macomb County) — to be confirmed before service |
| Rami Reda / Youssef Reda / Ziad Reda (Hamilton, ON) | Hague Art. 10(b) process server / Art. 5(a) | Hamilton, ON — registered office / residence to be confirmed before service |
| Ziad Ghanem (TerrAscend CEO & President) | FRCP 4(d) waiver via counsel; Hague Art. 5(a)/10(b) fallback | c/o TerrAscend Corp., 3610 Mavis Road, Mississauga, ON L5C 1W2 (no U.S. dwelling of record) |
| Gilbert Milam, Jr. ("Berner") | FRCP 4(e) personal delivery, or Cal. CCP § 415.20 substituted service at place of business | Cookies Creative, 2352 Circadian Drive, Santa Rosa, CA 95407 (residence to be confirmed) |
| Jennifer Lynn Domingue (n/k/a Jennifer Lynn Smith) | FRCP 4(e) personal service | 1743 Maplelawn Dr, Troy, MI 48084-4603 (per SBM member directory) |

Service receipts and proofs of service for each Defendant shall be filed with the Court as separate proof-of-service exhibits upon return.

Dated: August 13, 2026
/s/ Michael Fong
Michael Fong
In Propria Persona (Self-Represented Plaintiff)
4225 Miller Road, Suite 9, #131
Flint, Michigan 48507
(810) 444-0118
michael@gagegreengroup.com

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Michael Fong

**DEFENDANTS**

TerrAscend Corp., et al. (full roster in Complaint caption)

**(b)** County of Residence of First Listed Plaintiff: Genesee County, MI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: ____________
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Michael Fong, In Propria Persona, 4225 Miller Rd, Ste 9, #131, Flint, MI 48507; (810) 444-0118

Attorneys *(If Known)*

Unknown at filing

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [x] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
15 U.S.C. § 1125(a); 18 U.S.C. §§ 1962(c) & 1962(d); MCL 566.31 et seq.

Brief description of cause:
Misappropriation of the GAGE trademarks and conversion of the brand equity into a publicly-traded enterprise.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER None pending in E.D. Mich.

DATE: August 13, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Michael Fong

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________